Brandon H. Brown, P.C. (SBN 266347)
bhbrown@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Russell E. Levine, P.C. (*pro hac vice*)
russell.levine@kirkland.com
John Lausch, P.C. (*pro hac vice*)
john.lausch@kirkland.com
Molly Kelley (*pro hac vice*)
molly.kelley@kirkland.com
Kourtney Baltzer (*pro hac vice*)
kourtney.baltzer@kirkland.com
Michael Gremillion (*pro hac vice*)
jacob.gremillion@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Steven Dirks (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. NW
Washington, D.C., 20004
Telephone: (202) 879-5000
Facsimile: (202) 389-5200

*Attorneys for Plaintiff Valeo Schalter und Sensoren GmbH*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| Valeo Schalter und Sensoren GmbH,<br><br>Plaintiff,<br><br>v.<br><br>NVIDIA Corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 5:23-cv-05721-EKL-VKD<br><br>**VALEO'S NOTICE OF MOTION AND MOTION TO COMPEL INVESTIGATION DOCUMENTS**<br><br><u>Hearing</u><br>Date: October 15, 2024<br>Time: 10:00 a.m.<br>Hon. Virginia K. DeMarchi |

# TABLE OF CONTENTS


**Page**

**I. INTRODUCTION** ........ **1**

**II. BACKGROUND** ........ **2**

A. A Former Valeo Employee Took Valeo's Trade Secrets to NVIDIA ........ 2

B. NVIDIA Conducted An Internal Investigation After Becoming Aware of Mr. Moniruzzaman's Theft ........ 3

C. NVIDIA Is Affirmatively Relying on the Substantive Conclusions and Thoroughness of This Internal Investigation to Support Its Defenses In This Case ........ 6

D. NVIDIA Served A Privilege Log Withholding Over 3,000 Documents All of Which Relate to This Internal Investigation ........ 7

**III. NVIDIA HAS WAIVED PRIVILEGE OVER ITS INVESTIGATION DOCUMENTS** ........ **8**

A. NVIDIA Voluntarily Waived Factual Work Product, Yet Has Refused To Produce Underlying Factual Records ........ 9

B. NVIDIA Has Impliedly Waived Attorney-Client Privilege and Opinion Work Product Over These Investigation Documents As Well ........ 11

**IV. CONCLUSION** ........ **14**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3D Systems, Inc. v. Wynne*,
2024 WL 940318 (S.D. Cal. Feb. 21, 2024) ........ 11, 13

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) ........ 9, 14

*Century Aluminum Co. v. AGCS Marine Ins. Co.*,
285 F.R.D. 468 (N.D. Cal. 2012) ........ 9

*Chiron Corp. v. Genentech, Inc.*,
179 F. Supp. 2d 1182 (E.D. Cal. 2001) ........ 12

*Holmgren v. State Farm Mut. Auto. Ins. Co.*,
976 F. 2d 573 (9th Cir. 1992) ........ 14

*In re Lidoderm Antitrust Litigation*,
2016 WL 4191612 (N.D. Cal. Aug. 9, 2016) ........ 2, 12, 13, 14

*Mushroom Associates v. Monterey Mushrooms, Inc.*,
1992 WL 442892 (N.D. Cal. 1992) ........ 12

*Rambus Inc. v. Samsung Elecs. Co.*,
2007 WL 3444376 (N.D. Cal. 2007) ........ 9

*Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*,
2012 WL 3062294 (N.D. Cal. July 26, 2012) ........ 14

*United States v. Sanmina Corp.*,
968 F.3d 1107 (9th Cir. 2020) ........ 8, 13

*Wisk Aero LLC v. Archer Aviation Inc.*,
2023 WL 4029892 (N.D. Cal. June 14, 2023) ........ 9, 10, 11

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 15, 2024 at 10:00 a.m., or soon thereafter as this matter can be heard before the Honorable Virginia K. DeMarchi in Courtroom 2, Fifth Floor, United States District Court for the Northern District of California, San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Plaintiff Valeo Schalter und Sensoren GmbH ("Valeo") will and hereby does move the Court to compel Defendant NVIDIA Corporation ("NVIDIA") to produce documents being withheld as privileged.

Statement of the Issue to Be Decided: Whether NVIDIA is improperly withholding documents as privileged given that NVIDIA has waived privilege over those documents.

In particular, Valeo seeks production of documents related to an internal investigation NVIDIA conducted. NVIDIA is withholding these documents under claims of attorney-client privilege and work product. These are all of the documents listed on NVIDIA's September 3, 2024 privilege log. As Valeo explains below, however, NVIDIA has waived privilege over these materials and all of the documents on NVIDIA's September 3, 2024 privilege log must be produced.

Valeo's motion is made in response to Judge DeMarchi's Order request for further briefing on this issue (Dkt. 85). It is based on this notice of motion and motion, the following memorandum of points and authorities; the supporting declaration of Kourtney Baltzer and the exhibits to that declaration. It further is based on the August 7, 2024 joint letter motion to compel (Dkt. 67) and the transcript of the August 20, 2024 hearing on that letter motion (Dkt. 88). The Court also may take judicial notice of other pleadings on file in this action and other written or oral argument that Valeo may present to the Court, including Valeo's Reply memorandum, which will be filed on October 1, 2024.

DATED: September 10, 2024

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Kourtney Baltzer*

Brandon H. Brown, P.C. (SBN 266347)
bhbrown@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Russell E. Levine, P.C. (pro hac vice)
russell.levine@kirkland.com
John Lausch, P.C. (pro hac vice)
john.lausch@kirkland.com
Molly Kelley (pro hac vice)
molly.kelley@kirkland.com
Kourtney Baltzer (pro hac vice)
kourtney.baltzer@kirkland.com
Michael Gremillion (pro hac vice)
jacob.gremillion@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Steven Dirks (pro hac vice)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. NW
Washington, D.C., 20004
Telephone: (202) 879-5000
Facsimile: (202) 389-5200

*Attorneys for Plaintiff Valeo Schalter und Sensoren GmbH*

## I. INTRODUCTION

This is a case involving substantial trade secret theft concerning Valeo's code for its parking assistance software—theft that has resulted in the conviction of an individual for the unlawful acquisition, use, and disclosure of Valeo's trade secrets. That individual, a former employee of Valeo, subsequently worked at NVIDIA where he was caught using Valeo's code during a collaborative videoconference call between the two companies. As soon as NVIDIA learned of the former Valeo employee's theft, NVIDIA admits that it began an investigation concerning whether that individual shared any of Valeo's code to others at NVIDIA and whether Valeo's code files were found within any of NVIDIA's systems. This investigation was led by two in-house NVIDIA lawyers and an internal IT specialist working with several other NVIDIA IT employees and engineers. Indeed, NVIDIA relies on the investigation in this case to affirmatively defend against Valeo's allegations of trade secret misappropriation by NVIDIA—including to rebut allegations of knowledge and willfulness, and to further contend that NVIDIA acted in good faith. NVIDIA has selectively revealed parts of this investigation, including its results and self-serving conclusions that the investigation was "extensive," "wide-ranging," and "comprehensive," among other things.

NVIDIA is free to rely on its self-described "extensive" investigation to defend itself, but that reliance comes at a cost: it has waived privilege as to the underlying facts and bases for its employees' opinions, which are now squarely relevant discovery in this case. The facts are indisputably relevant, as what existed on NVIDIA's computers and its search results are squarely not privileged and must be produced. NVIDIA did not dispute that the facts must be produced, but to date has produced virtually none of the underlying facts. NVIDIA must be ordered to produce those facts, many of which are contained in documents inappropriately withheld from production as shown on NVIDIA's September 3, 2024 privilege log.

The waiver does not end there, however. NVIDIA has also put at issue its own attorneys' opinions and thoughts, relying on in-house attorney conclusions about the efficacy and effectiveness of the search in order to defend itself against Valeo's claims of willful and intentional misappropriation. As one example, NVIDIA relies on a declaration from Ms. Morrison, a U.S. attorney who serves in-house at NVIDIA, who explains that she was "personally involved" in the

investigation, conducted numerous interviews of NVIDIA engineers, and concluded that NVIDIA performed a "comprehensive" search for stolen material. Valeo must be entitled to probe the substance of NVIDIA's defense and explore the results of that investigation, so that it can challenge and rebut NVIDIA's in-house counsels' conclusions that the investigation and remediation efforts were "comprehensive" along with the other conclusions offered by the four other declarants upon which NVIDIA relies.

To date, NVIDIA has largely withheld all documentation underlying this investigation by claiming attorney-client privilege and attorney work product. NVIDIA cannot have it both ways: by squarely placing its investigation at issue in the case as part of its defenses, it has waived privilege over the facts and opinions generated during that investigation. This is a classic sword and shield situation: NVIDIA cannot use its self-serving conclusions about the efficacy and results of its investigation as a sword against Valeo's claims of willful trade secret misappropriation while selectively shielding all underlying information that would allow Valeo to challenge that defense. "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *In re Lidoderm Antitrust Litigation*, 2016 WL 4191612, at *3 (N.D. Cal. Aug. 9, 2016). NVIDIA should be compelled to produce the information concerning this investigation that it is withholding as privileged, which is all of the documents included on September 3, 2024 privilege log, which is attached hereto as Exhibit 7.

## II. BACKGROUND

### A. A Former Valeo Employee Took Valeo's Trade Secrets to NVIDIA

In early 2021, shortly before giving notice of leaving Valeo, an employee, Mohammad Moniruzzaman, downloaded over 10,000 source code files and other confidential documents relating to Valeo's proprietary parking assistance software. Dkt. 1 at ¶ 68. Shortly thereafter, Mr. Moniruzzaman began working at NVIDIA where he was given a promotion and responsibility for developing NVIDIA's own nascent parking assistance software for an original equipment manufacturer ("OEM"). *Id.* at ¶ 10. It is undisputed that Mr. Moniruzzaman had and used Valeo's source code while at NVIDIA: on March 8, 2022, Mr. Moniruzzaman accidentally shared his desktop containing open Valeo source code files while on a collaborative videoconference call between the

two companies. *Id.* at ¶ 11. Mr. Moniruzzaman was arrested and, upon his arrest, German authorities recovered a personal computer and multiple NVIDIA-issued computers and confirmed the presence of Valeo's stolen code files and technical documents. *Id.* at ¶ 12. In September 2023, Mr. Moniruzzaman was convicted in Germany for unlawful acquisition, use, and disclosure of Valeo's trade secrets. *Id.*

**B. NVIDIA Conducted An Internal Investigation After Becoming Aware of Mr. Moniruzzaman's Theft**

Upon learning of the actions taken by the German police and Mr. Moniruzzaman's arrest in May 2022, NVIDIA began investigating the actions of Mr. Moniruzzaman and whether and how Valeo's code had infiltrated NVIDIA's computer systems and had been accessed by other NVIDIA employees. NVIDIA conveyed to Valeo that upon learning of Mr. Moniruzzaman's actions the day Mr. Moniruzzaman was arrested, "[Mr. Moniruzzaman]'s access to NVIDIA systems was immediately suspended pending a full investigation." Dkt. 1-1 at 1-2. After the German court issued an order requiring NVIDIA to surrender any copies it had of Valeo's code, NVIDIA thereafter submitted affidavits to the German court summarizing the investigation it conducted in an effort to explain that it did an allegedly expansive and thorough search to check whether Valeo's code was present within NVIDIA's systems and did not find any copies of Valeo's code. This included affidavits submitted by Jason Recla (NVIDIA's Senior Director of Information Security), Stephen Chandler (a U.K. solicitor employed by NVIDIA), and Azadeh Morrison (a U.S. lawyer serving as Senior Litigation Counsel at NVIDIA). Ex. 1[1] (July 8, 2022 Affidavit of Jason Recla); Ex. 2 (September 19, 2022 Affidavit of Jason Recla), Ex. 3 (September 13, 2022 Affidavit of Stephen Chandler), and Ex. 4 (September 20, 2022 Affidavit of Azadeh Morrison).

In the two affidavits Mr. Recla (NVIDIA's Senior Director of Information Security) signed on July 8, 2022 and September 19, 2022, he explains that he [redacted]. Ex. 1 at ¶ 2. As Mr. Recla explains, [redacted]

[1] The exhibits referenced herein are those attached to the Declaration of Kourtney Baltzer filed contemporaneously herewith.

[redacted]. Ex. 2 at ¶ 3. Mr. Recla also explained that [redacted] Ex. 2 at ¶¶ 9-10. Mr. Recla further stated that [redacted] Ex. 2 at ¶¶ 5-6. Mr. Recla also noted that [redacted] Ex. 2 at ¶ 9.

In Mr. Chandler's September 13, 2022 affidavit, he explains that [redacted]. Mr. Chandler states that, [redacted] Ex. 3 at ¶ 2. Mr. Chandler further explains [redacted]. He explains that [redacted] Ex. 3 at ¶ 3. Mr. Chandler additionally explains that [redacted]. Ex. 3 at ¶ 4. Mr. Chandler explains that [redacted] Ex. 3 at ¶ 5. Mr. Chandler states that [redacted]

[redacted]

Ex. 3 at ¶ 6. Mr. Chandler then describes in his affidavit that [redacted] Ex. 3 at ¶ 7. Mr. Chandler also [redacted] Ex. 3 at ¶ 7.

In her September 20, 2022 affidavit, Azadeh Morrison explained that [redacted] Ex. 4, at ¶ 4. Ms. Morrison described [redacted] Ex. 4, at ¶ 4. She further explains that [redacted] Ex. 4 at ¶¶ 1, 2, 4, 6, 7, 14. She goes on to describe [redacted]. *Id.* She additionally describes [redacted] Ex. 4, at ¶¶ 10-25. She also refers to [redacted]. Ex. 4 at ¶¶ 11, 13, 14, 15, 17, 18, 19, 20, 21, 23, 24, 25. In order to prepare her affidavit and reach the conclusions therein, Ms. Morrison also describes [redacted]. Ex. 4 at ¶¶ 11, 12, 16, 22.

### C. NVIDIA Is Affirmatively Relying on the Substantive Conclusions and Thoroughness of This Internal Investigation to Support Its Defenses In This Case

On November 7, 2023, Valeo filed its Complaint in this case concerning NVIDIA's misappropriation of Valeo's trade secrets. Dkt. 1. In its Answer to Valeo's Complaint, NVIDIA voluntarily described the prior internal investigation it conducted concerning Valeo's allegations, including that NVIDIA allegedly "performed an extensive search for any Valeo source code files, finding no Valeo code files in NVIDIA systems. NVIDIA provided [to Valeo and a German court] sworn affidavits detailing the searches it conducted." Dkt. 23 at ¶ 11. NVIDIA also described this investigation in detail in response to an interrogatory asking for "details of any investigation conducted by NVIDIA into the claims asserted in this action." Ex. 5 (NVIDIA's Responses to Valeo's First Set of Interrogatories) at 16. In that response, NVIDIA voluntarily explained that:

> "NVIDIA [] conducted a wide-ranging search across numerous NVIDIA file storage repositories and other resources and interviewed many NVIDIA employees. NVIDIA found no evidence that any copies of the allegedly retained Valeo code were present on NVIDIA's platforms. Further, it found no evidence that Mr. Moniruzzaman had shown or otherwise disclosed the allegedly retained Valeo code to any NVIDIA employee who had collaborated with Mr. Moniruzzaman during the brief period of his employment at NVIDIA. NVIDIA also identified the code written by Mr. Moniruzzaman for NVIDIA since commencing his employment in September 2021…In the course of the German proceeding, as contained in the pleadings already available to Valeo from that proceeding, NVIDIA described the investigations conducted into Mr. Moniruzzaman's conduct with respect to the alleged use of Valeo code. The details of those investigations are set out in the statements of Arhur Rajala, Jason Recla, Stephen Chandler, and Azadeh Morrison, as well as in letter correspondence between the parties."

Ex. 5 at 18.

NVIDIA is affirmatively relying on its internal investigation to defend against Valeo's allegations, to argue that it is not vicariously liable for the actions of Mr. Moniruzzaman because it completed an allegedly "extensive" and "wide-ranging" investigation to make a determination that Valeo's code is allegedly not present in NVIDIA's systems. Indeed, in its Answer, NVIDIA set forth affirmative defenses of: "No Misappropriation" (allegedly because "***NVIDIA never improperly received***, relied upon, or used any alleged Valeo trade secret"); "Defendant's Good Faith" (allegedly because "NVIDIA acted in good faith and had no reason to believe that the former Valeo employee

that Valeo identifies in the Complaint retained any alleged trade secrets. Moreover, ***NVIDIA took affirmative steps to prevent the unintentional receipt of third-party confidential information***"); and "No Willful Misappropriation" (allegedly because "NVIDIA took every reasonable step it could to prevent trade secrets from entering the company. Even if an employee violated their agreement with NVIDIA, NVIDIA could not have known that any trade secrets entered the NVIDIA ***given the practices NVIDIA employed to prevent such confidential information from infecting NVIDIA***"). Dkt. 23 at ¶¶ 135, 136, 140.

**D. NVIDIA Served A Privilege Log Withholding Over 3,000 Documents All of Which Relate to This Internal Investigation**

Valeo served document requests asking NVIDIA for documents showing any investigation, analysis, study, and/or forensic analysis conducted by NVIDIA or on behalf of NVIDIA by a third party regarding the allegations described in Valeo's Complaint, including the investigation NVIDIA described in its Answer to Valeo's Complaint. Ex. 6 (NVIDIA's Responses to Valeo's First Set of Requests for Production) at RFP No. 79. After Valeo inquired as to why NVIDIA did not produce any documents in response to those requests, NVIDIA pointed Valeo to the affidavits described above—that Valeo, not NVIDIA, produced as a result of obtaining from the German court action—and informed Valeo that it is "not aware of other non-privileged, responsive documents." Decl K. Baltzer at ¶¶ 9-10.

On September 3, 2024, NVIDIA served a privilege log containing 3,357 entries, all dated as being sent sometime between May 19, 2022 and September 20, 2022—during the timeframe beginning right after Mr. Moniruzzaman was arrested by the German police on May 19, 2022 and leading up to the submission of the affidavits concerning NVIDIA's investigation to the German court on September 20, 2022. Ex. 7 (NVIDIA's September 3, 2024 First Privilege Log). Indeed, all entries on NVIDIA's privilege log appear to be related to this investigation. *See* Ex. 7. The entries include several communications with many of the individuals identified in the affidavits submitted by Mr. Recla, Mr. Chandler, and Ms. Morrison described above, such as:

- [redacted] Ex. 7 at, *e.g.*, entry nos. 2-7, 9-12, 14-16, 18-23, 26-29, 34, 36-39, 41-43, 45-46, 488 3280.

- [redacted] Ex. 7 at, *e.g.*, entry nos. 8, 17, 124, 3278, 3314.
- [redacted] Ex. 7 at, *e.g.*, entry nos. 2, 1757, 2083, 2288, 2730-2732.
- [redacted] Ex. 7 at, *e.g.*, entry nos. 620, 628, 633, 638, 1096.
- [redacted] Ex. 7 at, *e.g.*, entry nos. 169, 170-172, 1809, 2132, 2141, 2145, 2385, 2426.
- [redacted] Ex. 7 at, *e.g.*, entry nos. 164-168, 170, 172, 1096, 1784, 1788-1791.
- [redacted] Ex. 7 at, *e.g.*, entry nos. 1867, 2130, 2132.
- [redacted]. Ex. 7 at, *e.g.*, entry nos. 1-7, 9-12, 14-16, 18-24, 26-29, 409, 417, 428, 1277, 1280, 1282-1284, 1286-1291 as well as all email communications listed within the first 163 entries.
- [redacted] Ex. 7 at, *e.g.*, entry nos. 184-193, 260-265, 267-275, 278.

All documents on NVIDIA's September 3, 2024 privilege log are withheld on the basis of either attorney-client privilege or attorney work product, or both. *See* Ex. 7. Neither basis for withholding is appropriate and all documents on NVIDIA's September 3, 2024 privilege log should be produced.

## III. NVIDIA HAS WAIVED PRIVILEGE OVER ITS INVESTIGATION DOCUMENTS

When a party selectively and voluntarily discloses privileged information to an adversary in litigation, the party waives that privilege. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1120-21 (9th Cir. 2020). Such waiver extends to undisclosed communications or information if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same

subject matter; and (3) they ought in fairness to be considered together." *Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 4029892, at *8 (N.D. Cal. June 14, 2023).

Further, implied waiver of privilege occurs when "(1) assertion of the privilege was a result of some affirmative act[] by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Rambus Inc. v. Samsung Elecs. Co.*, 2007 WL 3444376, at *3 (N.D. Cal. 2007). Being rooted in fairness, the implied waiver doctrine "is often expressed in terms of preventing a party from using the privilege as both a shield and a sword" and "applies equally to the work product privilege" as well as "the attorney-client privilege." *Bittaker v. Woodford*, 331 F.3d 715, 719, n.6 (9th Cir. 2003).

NVIDIA has both voluntarily and impliedly waived privilege over its internal investigation. Because NVIDIA has voluntarily described certain aspects of its investigation in answer to Valeo's interrogatories, and referenced the content of the affidavits that were submitted to the German court, NVIDIA has intentionally waived privilege over the information it has disclosed as well as information it has not disclosed concerning the same subject matter, such that they ought in fairness be considered together. Further, by describing the investigation in its Answer to Valeo's Complaint and further summarizing that investigation in its interrogatory responses, NVIDIA is affirmatively relying on this investigation to defend against Valeo's allegations and to argue that it is not vicariously liable for the actions of Mr. Moniruzzaman because it completed an allegedly "extensive," "wide-ranging," fulsome, and thorough investigation. Dkt. 23 at ¶ 11; Ex. 5 at 18. NVIDIA's reliance on this investigation has made the investigation "at issue" in the case, and NVIDIA's attempt to shield the underlying documents with claims of privilege denies Valeo access to information vital to defending against NVIDIA's claims.

### A. NVIDIA Voluntarily Waived Factual Work Product, Yet Has Refused To Produce Underlying Factual Records

Here, NVIDIA seeks to "use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the [allegedly] privileged materials." *Century Aluminum Co. v.*

*AGCS Marine Ins. Co.*, 285 F.R.D. 468, 472 (N.D. Cal. 2012). In withholding the more than 3,000 documents under claims of privilege, NVIDIA does not attempt to distinguish between, on one hand, the information concerning its investigation that it voluntarily disclosed in its Answer, interrogatory response, and affidavits, and on the other hand, the information that is contained in the withheld documents. This situation is similar to that in *Wisk*. In *Wisk*, defendant submitted a declaration by an individual (Harrison) who conducted an investigation to search for trade secret theft and produced a report of its internal investigation into those allegations. *Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 4029892, at *2 (N.D. Cal. June 14, 2023). The Court held that defendant "waived work product protection over the information about [that] investigation that it voluntarily disclosed in the litigation." *Id.* at *8. The Court further held that this waiver extended to any "factual" work product concerning the same subject matter and ordered defendant to "produce all documents and communications that Harrison[] considered during the course of [the] investigation, and [] relied on or considered in preparing his declaration, including documents and communications that were provided to him by [defendant's] counsel." *Id.* at *9.

Indeed, NVIDIA recognizes that underlying factual information should be produced to Valeo, as it admitted in the parties' earlier joint letter brief that "NVIDIA has never concluded that Valeo cannot conduct discovery into the ***facts*** of [] NVIDIA's investigation." Dkt. 67 at 5. And while NVIDIA has disclosed and relied on information contained in the affidavits submitted to the German court in detailing its investigation in its interrogatory response, NVIDIA has not produced any documents underlying those affidavits such as interview notes or documentation showing information analyzed to prepare those declarations. The affidavits Valeo was provided in the German case, and described in detail in section II.B, *supra* and attached hereto as Exhibits 1-4 describe many pieces of information that were relied on in preparing the affidavits that have not been produced to Valeo.

In Mr. Chandler's affidavit, he refers to interviews with various NVIDIA employees and emails exchanged between Mr. Chandler and many individuals that worked with Mr. Moniruzzaman confirming that those individuals did not receive any Valeo code from Mr. Moniruzzaman. *See* section II.B, *supra*. Yet, NVIDIA has not produced any of these communications or notes from interviews

underlying these investigations. These purportedly exist as evident from NVIDIA's privilege log, as discussed in section II.D, *supra*.

In her affidavit, Ms. Morrison also refers to her review of several files, directories, and information and communications provided from others that led her to the conclusions in her affidavit that Valeo's files were not found in search results in NVIDIA's systems. *See* section II.B, *supra*. Yet NVIDIA has produced none of this underlying information either, which also evidently exists based on NVIDIA's privilege log, which details many communications between Ms. Morrison and others she worked with at NVIDIA concerning this investigation as well as entries concerning factual "search results." *See* Section II.D, *supra*.

Nor has NVIDIA produced any of the information underlying Mr. Recla's affidavit such as information underlying the steps he took in investigating NVIDIA's computer systems or the communications he had with others such as those to [redacted]. *See* Section II.B, *supra*.

NVIDIA should be ordered to produce these materials, including communications, interview notes, and other documentation relied on to prepare these affidavits as described in section II.B and II.D, *supra* because "fairness requires a further disclosure of related, protected information i[n] order to prevent a selective and misleading presentation of evidence to the disadvantage of [Valeo]." *Wisk*, 2023 WL 4029892, at *8.

**B. NVIDIA Has Impliedly Waived Attorney-Client Privilege and Opinion Work Product Over These Investigation Documents As Well**

NVIDIA admits that it is relying on its investigation to deny Valeo's allegations and to support certain affirmative defenses it is asserting. Dkt. 88 at 23:18-20. These affirmative defenses include NVIDIA's "Good Faith," "No Willful Misappropriation," and "No Misappropriation." By doing so, NVIDIA has placed at issue its own knowledge and that of its attorneys concerning this investigation. By relying on the information contained in the affidavits—including those of NVIDIA attorneys—to support its defenses in this litigation, NVIDIA "put the protected information at issue by making it relevant to the case." *3D Systems, Inc. v. Wynne*, 2024 WL 940318, at *6 (S.D. Cal. Feb. 21, 2024)

(finding implied waiver of privileged material relating to internal investigation where party was relying on information uncovered in the investigation to support a claim in the case).

NVIDIA has asserted that it conducted an "extensive" and "wide-ranging" investigation, "found no evidence of any copies" of Valeo's code at NVIDIA, and found "no evidence that Mr. Moniruzzaman had shown or otherwise disclosed" Valeo's code to any NVIDIA employees. Dkt. 23 at ¶ 11; Ex. 5 at 18. By relying on this investigation to support its affirmative defenses, the truth of these statements and those in the affidavits NVIDIA relies on—and thus the substantive conclusions and actual thoroughness of NVIDIA's investigation—can only be evaluated by Valeo through review of the documentation NVIDIA is withholding as privileged. NVIDIA cannot be allowed to use this investigation as a sword to promote its affirmative defenses and yet shield discovery of the information underlying the investigation as privileged.

This situation is similar to when an alleged patent infringer relies on advice of counsel to defend against allegations of willful patent infringement. In such a situation, the alleged infringer affirmatively injects the advice of counsel into the litigation and such information must be produced to its adversary. *Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2001) ("[I]nvoking the advice of counsel defense is not a painless decision or a free lunch. There are discovery consequences to such an assertion. Fairness requires that a party who seeks to be absolved of willful infringement because it relied on counsel's advice pay the discovery price. The party asserting the defense waives attorney-client privilege and work product immunity to the broadest extent consonant with direct relevance to the advice of counsel itself); *Mushroom Associates v. Monterey Mushrooms, Inc.*, 1992 WL 442892, at *3-5 (N.D. Cal. 1992) (finding that reliance of counsel waived privilege as to all documents that addressed the issue of infringement and explaining that "[t]he underlying principle supporting waiver when a party relies upon the advice of counsel defense is fairness. A party should not be allowed to rely on self-serving documents in its defense while withholding potentially damaging information under the guise of attorney-client privilege.")

NVIDIA cannot avoid waiver by offering to rely solely on non-privileged information (i.e., what it considers not privileged and contained in the affidavits submitted in Germany) to support its affirmative defenses. *See In re Lidoderm Antitrust Litigation*, 2016 WL 4191612, at *5 (N.D. Cal.

Aug. 9, 2016). In reaching the conclusions in their affidavits, there is no doubt that the declarants relied on information contained in NVIDIA's privilege log that NVIDIA is withholding as privileged to reach the conclusions and statements set forth in those affidavits. This is shown by the many communications on the log between the declarants as well as other individuals referred to in the affidavits and described in section II.D, *supra*. Without production of this information, Valeo cannot know what is contained in the communications from certain NVIDIA employees and the lawyers who were involved in the internal investigation, to evaluate how thorough NVIDIA's investigation was, what they may have missed, why NVIDIA believes it was thorough, and so that Valeo has the opportunity to challenge the conclusions in NVIDIA's interrogatory response and affidavits. "[I]t would be unfair to not allow [Valeo] access" to the allegedly privileged information even though the conclusions are based in part on non-privileged information too. *See In re Lidoderm Antitrust Litigation*, 2016 WL 4191612, at *5. The information uncovered by NVIDIA during its investigation "go[es] to the heart" of the thoroughness of NVIDIA's investigation and whether it actually determined that Valeo's information did not infiltrate NVIDIA. *See 3D Systems*, 2024 WL 940318, at *6.

While courts differentiate between a waiver of factual work product and a waiver of opinion work product, opinion work product is discoverable "when mental impressions are at issue in a case and the need for the material is compelling." *Sanmina*, 968 F.3d at 1125. Here, NVIDIA's affidavits from its U.S. and U.K. lawyers describe their conclusions regarding the thoroughness of NVIDIA's investigation and opinions the attorneys reached to be able to conclude that NVIDIA was not infected with any of Valeo's files or confidential information. Ex. 3; Ex. 4. Further, in its Answer and interrogatory response, NVIDIA describes how "extensive" and "wide-ranging" its investigation was, squarely putting at issue the mental impressions of those involved in NVIDIA's investigation, including those of its in-house counsel. Dkt. 23 at ¶ 11; Ex. 5 at 18. And in her affidavit, NVIDIA's U.S. in-house counsel, Ms. Morrison, describes how [redacted] Ex. 4, at ¶ 4. She also describes that she was [redacted]

[redacted] Ex. 4, at ¶ 4. She also [redacted] Ex. 4, at ¶¶ 1-9, 11, 12, 16, 22.

Valeo also has a compelling need for the material NVIDIA is protecting as opinion work product. Without such information, Valeo is deprived of the underlying information that led NVIDIA's counsel to reach the conclusions contained in their affidavits. *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F. 2d 573, 577 (9th Cir. 1992) (holding that "strategy, mental impressions, and opinion[s] were directly at issue" in the case and needed to be produced). Because NVIDIA has affirmatively placed attorney opinions at issue, disclosure of additional opinion work product is justified. *See Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*, 2012 WL 3062294, at *7 (N.D. Cal. July 26, 2012).

Similar to the situation in *In re Lidoderm*, NVIDIA tries to take the position of "Trust us. The justifications we are putting forward here are [how we reached the conclusions in our interrogatory response and affidavits]." *See In re Lidoderm Antitrust Litigation*, 2016 WL 4191612, at *5. But like in that case, in order to test or rebut NVIDIA's assertions, in fairness Valeo should be given access to contemporaneous information regarding those topics that implicate privileged information. *Id.* "In practical terms, this means that [NVIDIA] may not abuse the privilege by asserting claims [Valeo] cannot adequately dispute unless it has access to the privileged materials. [NVIDIA] is said to have implicitly waived the privilege." *Bittaker*, 331 F.3d 715, 719 (9th Cir. 2003).

## IV. CONCLUSION

For the foregoing reasons, Valeo respectfully requests the Court to compel NVIDIA to produce all of the documents on its September 3, 2024 privilege log, which is attached as Exhibit 7 hereto.

DATED: September 10, 2024

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Kourtney Baltzer*

Brandon H. Brown, P.C. (SBN 266347)
bhbrown@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Russell E. Levine, P.C. (pro hac vice)
russell.levine@kirkland.com
John Lausch, P.C. (pro hac vice)
john.lausch@kirkland.com
Molly Kelley (pro hac vice)
molly.kelley@kirkland.com
Kourtney Baltzer (pro hac vice)
kourtney.baltzer@kirkland.com
Michael Gremillion (pro hac vice)
jacob.gremillion@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Steven Dirks (pro hac vice)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. NW
Washington, D.C., 20004
Telephone: (202) 879-5000
Facsimile: (202) 389-5200

*Attorneys for Plaintiff Valeo Schalter und Sensoren GmbH*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on counsel of record via the CM/ECF system of the United States District Court for the Northern District of California.

DATED: September 10, 2024

*/s/ Kourtney Baltzer*
Kourtney Baltzer