UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VALEO SCHALTER UND SENSOREN GMBH,<br><br>Plaintiff,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Case No. 23-cv-05721-EKL (VKD)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF INVESTIGATION DOCUMENTS**<br><br>Re: Dkt. No. 92 |

Plaintiff Valeo Schalter und Sensoren GmbH ("Valeo") moves for an order compelling defendant NVIDIA Corporation ("NVIDIA") to produce certain documents NVIDIA claims are protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Dkt. No. 92 (Dkt. No. 99-2). NVIDIA opposes the motion. Dkt. No. 102. The Court held oral argument on the motion on October 15, 2024. Dkt. No. 134; Dkt. No. 142.

Having considered the moving and responding papers and the parties' arguments at the hearing, the Court grants in part and denies in part Valeo's motion.

**I.    BACKGROUND**

Valeo alleges that in early 2021, one of its employees, Mohammad Moniruzzaman, downloaded over 27,000 of the company's source code files and other confidential materials relating to Valeo's parking assistance technology. Dkt. No. 1 ¶¶ 65, 68. Shortly thereafter, Mr. Moniruzzaman left Valeo and joined NVIDIA, which was then developing competing parking assistance technology. *Id.* ¶¶ 10-11. Mr. Moniruzzaman's conduct was discovered six months into his employment at NVIDIA, and a criminal investigation of Mr. Moniruzzaman was

commenced in Germany where Valeo maintains its principal place of business.[1] *Id.* ¶ 12.

Upon learning of the criminal investigation of Mr. Moniruzzaman in May 2022, NVIDIA began an internal investigation into Mr. Moniruzzaman's conduct. Dkt. No. 1-1 at 2; Dkt. No. 23 ¶¶ 10-11, 14; Dkt. No. 102-1 ¶ 4. Meanwhile, Valeo initiated civil proceedings against NVIDIA in Germany, asserting copyright infringement and trade secret misappropriation claims. Dkt. No. 1 ¶¶ 73, 81, 102; Dkt. No. 23 ¶ 10. On April 25, 2022, Valeo sought and obtained an order from the German court requiring NVIDIA "to perform comprehensive searches for Valeo code files in [its] systems and return any Valeo code it found." Dkt. No. 23 ¶ 10; Dkt. No. 102-2 ¶ 5; *see also* Dkt. No. 101-4 at ECF 7 (April 25, 2022 Order required NVIDIA "to surrender the files that are the subject of the legal dispute for the purposes of sequestration, to the extent to which such files are stored in printed format or on electronic media at [NVIDIA]."). Subsequently, in May 2022, at Valeo's request, the court appointed an independent expert to "inspect NVIDIA's code base" for any indication of Valeo code. Dkt. No. 23 ¶ 12. NVIDIA retained outside counsel to represent it in the German civil proceedings. Dkt. No. 102-1 ¶ 4; Dkt. No. 1 ¶ 73.

NVIDIA says that it "conducted a search of its systems for specific files that Valeo identified." Dkt. No. 102-1 ¶ 5. As part of that investigation, NVIDIA "interviewed Mr. Moniruzzaman and his NVIDIA colleagues who all confirmed that Mr. Moniruzzaman never shared Valeo code, documents, or other confidential information with them." *Id.*; *see also* Dkt. 99-7 at 18 ("NVIDIA also conducted a wide-ranging search across numerous NVIDIA file storage repositories and other resources and interviewed many NVIDIA employees."). As directed by the German court, NVIDIA provided the court-appointed independent expert "a repository of its source code containing the full history of all changes made to the code from November 15, 2015, to June 22, 2022." Dkt. No. 23 ¶ 12. The expert ultimately found "no evidence that NVIDIA's code included any part of Valeo code." *Id.* ¶ 13.

On July 8, 2022, NVIDIA filed an affidavit from its head of IT Security, Jason Recla, in

---

[1] Mr. Moniruzzaman was later convicted in Germany for unlawful acquisition, use, and disclosure of Valeo's trade secrets. Dkt. No. 1 ¶ 12.

2

the German proceedings. Dkt. No. 99-3. The affidavit described a search overseen by Mr. Recla for Valeo files across NVIDIA computers and source-code repositories. *Id*. ¶¶ 2, 5-7. In his affidavit, Mr. Recla attested that the search "did not yield any hits for files of Valeo Schalter und Sensoren GmbH," but he reported that no backup copies of Mr. Moniruzzaman's laptop or workstation could be found because of the way Mr. Moniruzzaman had modified his computer. *Id.*

On July 29, 2022, the German court issued an order finding that NVIDIA failed to fully comply with its order to "produce the Valeo files in its possession or explain the impossibility of production," and imposed penalties against NVIDIA. Dkt. No. 102-2 ¶ 5. NVIDIA appealed this order. Dkt. No. 142 at 64:3-13. Nevertheless, while the appeal was pending, NVIDIA filed several supplemental affidavits with the German court. *Id.* The supplemental affidavits included a second affidavit from Mr. Recla dated September 19, 2022. Dkt. No. 99-4. This affidavit disclosed additional details regarding NVIDIA's efforts to search for Valeo files, including (1) the names of the individuals who performed the searches as well as other NVIDIA employees who were consulted; (2) details regarding the software tools and methodologies employed in the searches; (3) details regarding the locations searched; and (4) further details describing the results of those searches. *Id.*

NVIDIA also filed with the German court affidavits from its in-house counsel, Stephen Chandler and Azadeh Morrison, dated September 13 and 20, 2022, respectively. Dkt. No. 99-5; Dkt. No. 99-6. Mr. Chandler's affidavit disclosed that he had conducted and/or participated in numerous interviews relating to NVIDIA's investigation and included the names of the employees interviewed and the responses obtained during the interviews. Dkt. No. 99-5 ¶¶ 2-4. Mr. Chandler further attested that he received a list of NVIDIA employees who worked with Mr. Moniruzzaman, and that he emailed each of them asking for confirmation that the following statement was true: "To the best of my knowledge, information, and belief, I have never received any source code belonging to Valeo whether direct from Mohammad Moniruzzaman or from any other source." *Id.* ¶¶ 5-6. His affidavit quoted directly from the responses he received and attached a copy of his original email to the employees. *Id.* ¶ 7.

3

Ms. Morrison's affidavit disclosed that she was also a key participant in the investigation, with responsibility for overseeing the searches for Valeo files. Dkt. No. 99-6 ¶ 1. Her affidavit identified by name the numerous individuals in IT, e-Discovery, engineering and other departments at NVIDIA with whom she worked to investigate Valeo's allegations. *See id*. ¶¶ 3, 6, 7. Ms. Morrison attested that she worked with Mr. Recla to look for backup copies of Mr. Moniruzzaman's laptop and computer but ultimately confirmed that "no such back-up copies exist." *Id.* ¶ 3. She also described her involvement in collecting Mr. Moniruzzaman's files, her "personal[] review" of some of the documents, and her findings that Valeo's files were not present. *Id.* ¶¶ 11-13.

On January 9, 2023, in response to NVIDIA's appeal, the German court reversed the decision imposing penalties against NVIDIA for failure to comply with the prior court order. Dkt. No. 142 at 70:16-24. On June 15, 2023, Valeo withdrew its requests for relief in the German proceedings, and, on October 5, 2023 the German court ordered Valeo to pay NVIDIA's costs and fees incurred in the proceedings. Dkt. No. 23 ¶ 13.

On November 7, 2023, Valeo filed its complaint in this action, asserting violations of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1837, and the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq*. Dkt. No. 1 at 23, 27. NVIDIA filed its answer on January 8, 2024. Dkt. No. 23. In its answer, NVIDIA asserts that no trade secret misappropriation has occurred and alleges that "the key issues involving NVIDIA have already been litigated and determined in NVIDIA's favor in Germany." *Id.* ¶ 1. NVIDIA further asserts that "a fulsome investigation revealed that Valeo's claims had no merit." *Id.* NVIDIA's answer specifically references the affidavits it filed in the German action:

> NVIDIA fully cooperated with German authorities and performed an extensive search for any Valeo source code files, finding no Valeo code files in NVIDIA systems. NVIDIA provided sworn affidavits detailing the searches it conducted.

*Id.* ¶ 11; *see also id.* ¶ 14 ("NVIDIA also undertook extensive searches for Valeo code on its systems and found nothing . . . ."). NVIDIA asserts twelve affirmative defenses in its answer, including the following:

4

**Fourth Defense**
**No Misappropriation**

Valeo cannot prevail against NVIDIA on its claims for misappropriation, in whole or in part, because NVIDIA never improperly received, relied upon, or used any alleged Valeo trade secret.

*Id.* ¶ 135.

**Fifth Defense**
**Defendant's Good Faith**

Valeo's claims for misappropriation of trade secrets are barred, in whole or in part, because NVIDIA acted in good faith and had no reason to believe that the former Valeo employee that Valeo identifies in the Complaint retained any alleged trade secrets. Moreover, NVIDIA took affirmative steps to prevent the unintentional receipt of third-party confidential information. Every employee at NVIDIA and its affiliates, including the former Valeo employee identified in the Complaint, is required to agree in writing not to bring or disclose to NVIDIA, or use, any confidential information or trade secrets from their prior employer.

*Id.* ¶ 136.

**Ninth Defense**
**No Willful Misappropriation**

NVIDIA has not willfully or maliciously misappropriated any of Valeo's alleged trade secrets. NVIDIA took every reasonable step it could to prevent trade secrets from entering the company. Even if an employee violated their agreement with NVIDIA, NVIDIA could not have known that any trade secrets entered NVIDIA given the practices NVIDIA employed to prevent such confidential information from infecting NVIDIA.

*Id.* ¶ 140.

During discovery in this action, Valeo served interrogatories on NVIDIA, including Interrogatory No. 4 which asks NVIDIA to:

> [d]escribe the circumstances of Mohammad Moniruzzaman's recruitment by, hiring by, and departure from NVIDIA, including the date NVIDIA and/or any third party working on behalf of NVIDIA (such as a recruiter or otherwise) first had contact with Mohammad Moniruzzaman; who at NVIDIA and/or any third party working on behalf of NVIDIA (such as a recruiter or otherwise) had contact with Mohammad Moniruzzaman before he began his employment at NVIDIA and the scope of each interaction between

5

>NVIDIA and/or any third party working on behalf of NVIDIA (such as a recruiter or otherwise) and Mohammad Moniruzzaman before his employment at NVIDIA began; whether, when, and why Mr. Moniruzzaman was terminated from NVIDIA, including all details of any investigation conducted by NVIDIA into the claims asserted in this action; and Mr. Moniruzzaman's current status with respect to NVIDIA, including whether he continues to consult, be paid by, subject to any legal or contractual obligations with, or interact with NVIDIA.

Dkt. No. 99-7 at 16. NVIDIA's response to this interrogatory states in relevant part:

>NVIDIA also conducted a wide-ranging search across numerous NVIDIA file storage repositories and other resources and interviewed many NVIDIA employees. NVIDIA found no evidence that any copies of the allegedly retained Valeo code were present on NVIDIA's platforms. Further, it found no evidence that Mr. Moniruzzaman had shown or otherwise disclosed the allegedly retained Valeo code to any NVIDIA employee who had collaborated with Mr. Moniruzzaman during the brief period of his employment at NVIDIA.
>
>. . .
>
>In the course of the German proceeding, as contained in the pleadings already available to Valeo from that proceeding, NVIDIA described the investigations conducted into Mr. Moniruzzaman's conduct with respect to the alleged use of Valeo code. The details of those investigations are set out in the statements of Arthur Rajala, Jason Recla, Stephen Chandler, and Azadeh Morrison, as well as in letter correspondence between the parties.

*Id.* at 18. Valeo also served Interrogatory No. 7 on NVIDIA, which asks:

>If you contend that any of the Valeo trade secrets set forth in Valeo's Section 2019.210 Trade Secret Disclosure are not trade secrets, were not misappropriated, or were not reasonably protected by Valeo as trade secrets, explain the factual and legal bases for any such contentions, including a specific identification of any documents and testimony supporting any such contentions.

Dkt. No. 117-3 at 22. NVIDIA responded in relevant part:

>With respect to Valeo's allegations that NVIDIA misappropriated or otherwise used Valeo Trade Secrets, such claims are without evidence. NVIDIA has conducted investigations, e.g., in the course of the German proceeding and in this lawsuit, which included wide-ranging searches across numerous NVIDIA file storage repositories and other resources, as well as interviews with many NVIDIA

6

employees. The investigations discovered no copies of the allegedly retained Valeo code and no evidence that Mr. Moniruzzaman disclosed the allegedly retained Valeo code or any Valeo Trade Secret to any NVIDIA employee.

*Id.* at 24.

Valeo also served requests for production, including Request for Production ("RFP") 79 which requests in relevant part:

> [d]ocuments sufficient to show any investigation, analysis, study, and/or forensics analysis conducted by NVIDIA or on behalf of NVIDIA by a third party regarding the allegations described in Valeo's Complaint, such as NVIDIA's misappropriation, misuse, and possession of Valeo's trade secrets, including, without limitation, documents sufficient to show the date on which the investigation began and the outcome of such investigation.

Dkt. No. 67-2 at 51. NVIDIA responded that it would "conduct a reasonably diligent search and produce nonprivileged documents responsive to this Request, to the extent they exist." *Id.* at 52.

On September 3, 2024, NVIDIA served a privilege log identifying more than 3,000 documents related to its earlier investigation of Mr. Moniruzzaman's conduct. Dkt. No. 93-7. For all entries on the log, NVIDIA asserts that the documents are withheld on the basis of attorney-client privilege and/or attorney work product. *Id.* Valeo moves to compel production of all such documents.[2]

## II. LEGAL STANDARD

As this action is premised on federal question jurisdiction, federal common law governs issues of privilege. Fed. R. Evid. 501; *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009).

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). The privilege extends to a client's confidential disclosures to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *Ruehle*, 583 F.3d at 607 (citations and quotations omitted). The party claiming the

---

[2] For purposes of this motion, Valeo does not challenge individual entries on NVIDIA's privilege log or NVIDIA's compliance with the requirements of Rule 26(b)(5) and the Ninth Circuit's standard for *prima facie* assertions of privilege and other protections. *See* Dkt. No. 142 at 4:19-5:18.

7

1  privilege has the burden to establish that it applies. *See United States v. Martin*, 278 F.3d 988,
2  999–1000 (9th Cir. 2002).

3  The attorney work product doctrine protects from discovery documents and tangible things
4  prepared by a party or his representative in anticipation of litigation or for trial. Fed. R. Civ. P.
5  26(b)(3); *Sanmina*, 968 F.3d at 1119 (citation omitted). "At its core, the work-product doctrine
6  shelters the mental processes of the attorney, providing a privileged area within which he can
7  analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). The
8  doctrine protects both "material prepared by agents for the attorney as well as those prepared by
9  the attorney himself," *id*. at 238-39, and its primary purpose is to "prevent exploitation of a party's
10 efforts in preparing for litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir.
11 1989). Typically, work product protection extends to interview notes, memoranda, summaries,
12 and analyses, as well as to verbatim witness statements. *See Hickman v. Taylor*, 329 U.S. 495,
13 511 (1947); *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226-YGR (JSC), 2016 WL
14 2606830, at *3 (N.D. Cal. May 6, 2016). A party asserting work product protection bears the
15 burden of demonstrating that the protection applies. *See, e.g., Visa U.S.A., Inc. v. First Data
16 Corp.*, No. C-02-1786 JSW (EMC), 2004 WL 1878209, at *5 (N.D. Cal. Aug. 23, 2004).

17 The protections afforded by the attorney-client privilege and the work product doctrine are
18 not absolute. The attorney-client privilege may be waived expressly or by implication. A party
19 "may implicitly waive the privilege by asserting a claim or defense that relies on privileged
20 materials as its basis." *Dukes v. Wal-Mart Stores, Inc.*, No. 01-cv-2252 CRB (JSC), 2013 WL
21 1282892, at *6 (N.D. Cal. Mar. 26, 2013) (citing *Weil v. Inv./Indicators, Research & Mgmt.*, 647
22 F.2d 18, 24 (9th Cir. 1981)). "In practical terms, this means that parties in litigation may not abuse
23 the privilege by asserting claims the opposing party cannot adequately dispute unless it has access
24 to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003); *see also
25 Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("Where a party raises a
26 claim which in fairness requires disclosure of the protected communication, the privilege may be
27 implicitly waived."). By contrast, "[a]n express waiver occurs when a party discloses privileged
28 information to a third party who is not bound by the privilege, or otherwise shows disregard for

the privilege by making the information public." *Bittaker*, 331 F.3d at 719. "A party need not have intended to waive privilege when it made the disclosure," *Dukes*, 2013 WL 1282892 at *7 (citing *Weil*, 647 F.2d at 24), and "an express waiver need not be effectuated by words or accompanied by the litigant's subjective intent," *Bittaker*, 331 F.3d at 719 n.4.

Similarly, work product protection also may be waived. *Nobles*, 422 U.S. at 239. An express or voluntary disclosure of work product waives the protection where such disclosure is made to an adversary in litigation or where the disclosure is made in a manner that substantially increases the opportunities for potential adversaries to obtain the work product. *Sanmina*, 968 F.3d at 1121 (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2024 (3d ed. 2020)); *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) ("[T]he work-product privilege may be waived by disclosure to third parties which results in disclosure to an adversary party."). Work product protection may also be waived implicitly by putting the protected work product at issue, such as by asserting claims that the opposing party cannot adequately dispute unless it has access to that protected work product. *See Bittaker*, 331 F.3d at 719; *Chevron*, 974 F.2d at 1162-63; *Sanmina Corp.*, 968 F.3d at 1124 ("While we are generally guided by the same fairness principle underlying waivers by implication in the attorney-client privilege context, the overriding concern in the work-product context is not the confidentiality of a communication, but the protection of the adversary process."). Moreover, even if the protection is not waived, work product may be discoverable if the materials meet the requirements of Rule 26(b)(1) and if the party seeking production shows a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). Upon such a showing, a court must nevertheless "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," Fed. R. Civ. P. 26(b)(3)(B).

## III.  DISCUSSION

Valeo asserts two principal arguments in support of its motion to compel. First, Valeo argues that NVIDIA is improperly withholding at least some non-privileged documents that

9

contain factual information about the investigation NVIDIA conducted. *See* Dkt. No. 99-2 at 8-11. Second, Valeo argues that NVIDIA has waived any privilege or protection that might otherwise apply to these documents, either expressly by disclosing the information they contain or impliedly by putting the investigation at issue in this action. *Id.* at 6, 9-13; *see also* Dkt. No. 116 at 2. The Court addresses each of these arguments.

### A.   Facts of the Investigation

Valeo argues that it is entitled to discovery of all facts regarding the investigation NVIDIA conducted of Mr. Moniruzzaman's conduct, including documents responsive to RFP 79. *See* Dkt. No. 99-2 at 10. Valeo says that NVIDIA has produced no documents responsive to RFP 79. *Id.* at 7. NVIDIA does not disagree that Valeo is entitled to discovery of all facts regarding NVIDIA's investigation, and NVIDIA concedes that it has produced no documents responsive to Valeo's request. Dkt. No. 102 at 5, 13-14. NVIDIA takes the position that all of the documents responsive to RFP 79 are privileged or protected. *Id.* at 5-7; *see also* Dkt. No. 142 at 49:12-18 ("We're talking about free flowing narrative emails that, yes, do report on searches but don't just touch on one topic, touch on a lot of privileged topics, a lot of legal advice and work product, and, yeah again they do repeat the search results, but—but it's not like there's a screenshot that says no results. If there was, we'd produce it."). NVIDIA suggests that Valeo may obtain all of the discovery it requires from the affidavits it already has from the German action, interrogatories, and depositions. Dkt. No. 102 at 5.

NVIDIA's position is difficult to square with its argument that *none* of the information disclosed in the affidavits filed in the German action is privileged or protected. Those affidavits disclose details of NVIDIA's investigation, including (1) the nature and extent of the investigation, (2) searches run in an effort to locate Valeo information, (3) the identities of witnesses, (4) the contents of witnesses' statements, and (5) communications between in-house counsel and witnesses. Valeo advises that, among the documents NVIDIA has withheld are communications between its in-house counsel, Mr. Chandler, and several NVIDIA employees. *See* Dkt. No. 142 at 35:25-36:2; Dkt. No. 93-7 (line 273); Dkt. No. 99-2 at 8. These communications are *quoted verbatim* in Mr. Chandler's affidavit, and yet they have not been

10

1  produced. If, as NVIDIA contends, it has disclosed only factual information in the affidavits it
2  filed in the German action, it may not now rely on a different characterization of that
3  information—e.g., as a privileged communication—in identifying documents responsive to
4  Valeo's document requests.

5  However, because the parties have not briefed this dispute with respect to any particular
6  entry on NVIDIA's privilege log, the Court cannot conclude that NVIDIA is withholding specific
7  documents that are simply factual records of its investigation. Thus, the Court turns to the
8  question of waiver.

### B. Waiver of Attorney Work Product

Valeo argues that NVIDIA has waived work product protection with respect to its investigation of Mr. Moniruzzaman's conduct and Valeo's misappropriation claims by relying on the details of the investigation and its results in this action. Dkt. No. 99-2 at 10; Dkt. No. 116 at 2; *see also* Dkt. No. 142 at 7:2-11. Valeo points to NVIDIA's affirmative defenses and its answers to Interrogatories Nos. 4 and 7, all of which rely to some extent on the investigation and the affidavits describing the investigation. Dkt. No. 99-2 at 6-7; Dkt. No 142 at 12:6-13:9. NVIDIA responds that because it has only disclosed *factual* information about its investigation, there has been no waiver of any work product. Dkt. No. 102 at 7. In addition, NVIDIA argues that to the extent the Court considers the affidavits filed by its in-house counsel in the German proceedings, these affidavits cannot be considered "voluntary" disclosures because NVIDIA was required to file these affidavits by the German court. *Id.* at 7-8.

As an initial matter, it is not entirely clear which attorneys' work product is at issue, as neither party refers the Court to specific disputed privilege log entries. However, it appears that, at a minimum, Valeo contests NVIDIA's assertion of work product protection for materials prepared by its in-house counsel, Mr. Chandler and Ms. Morrison, both of whom filed affidavits with the German court. Dkt. No. 99-2 at 10-11. As to these attorneys' work product, the Court considers whether NVIDIA has expressly or implicitly waived work product protection.

For express waiver, the Court considers whether NVIDIA voluntarily disclosed work product information to an adversary and whether this disclosure constitutes "more than the fact of

11

[a document's] existence," such that otherwise protected content has been disclosed. *Sanmina*, 968 F.3d at 1123. The Court easily concludes that NVIDIA expressly waived work product protection with respect to the information disclosed in Mr. Chandler's and Ms. Morrison's affidavits filed with the German court. Nothing in the record suggests that NVIDIA was ordered by the German court to submit affidavits from its attorneys; rather, NVIDIA chose to rely on affidavits from its in-house counsel. *See* Dkt. No. 142 at 43:15-18 (German court did not require NVIDIA to provide declarations of counsel). As summarized above, these affidavits disclosed details of NVIDIA's investigation, including the nature and extent of the investigation, the identities of witnesses, the contents of witness interviews, the contents of communications with witnesses, and efforts to search for and collect files containing Valeo materials. Furthermore, while these affidavits were originally filed in connection with the German proceedings, NVIDIA now affirmatively relies upon the contents of these same affidavits in support of its defenses to Valeo's claims in this action. *See* Dkt. No. 99-7 at 18 ("The details of those investigations are set out in the statements of Arthur Rajala, Jason Recla, Stephen Chandler, and Azadeh Morrison"); *see also* Dkt. No. 93 ¶¶ 9-10 (pointing Valeo to "the declarations of NVIDIA employees that detail the investigation at a high level"). In short, NVIDIA has made its in-house counsel fact witnesses. *See Rubalcava v. City of San Jose,* No. 20-cv-04191-BLF (VKD), 2022 WL 484988, at *4 (N.D. Cal. Feb. 16, 2022) (finding waiver of work product where plaintiff "did not disclose merely that his attorney had done an investigation that included witness interviews; he disclosed the contents (or partial contents) of those interviews.").

In any event, NVIDIA has certainly put its in-house counsel's work product at issue by relying on the investigation these attorneys conducted in defending against Valeo's claims. This reliance on the nature and quality of the investigation conducted by in-house counsel is inconsistent with NVIDIA's efforts to shield its attorneys' work from Valeo in this action, and thus NVIDIA has also implicitly waived work product protection as to these matters. *See Sanmina*, 968 F.3d at 1124 ("Presumably, Sanmina could have chosen to substantiate the deduction with other documents that did not make reference to the [attorney memoranda] but did not. Such conduct seems inconsistent with Sanmina's purported goal of keeping the memoranda

secret from the IRS.").

Valeo argues that NVIDIA's waiver of work product protection extends beyond factual matters to any opinion work product related to the investigation based on NVIDIA's purported intention to rely on the opinions of in-house counsel. Dkt. No. 99-2 at 11-12. Specifically, Valeo argues that NVIDIA intends to rely on counsel's conclusions that NVIDIA's internal investigation was (1) fulsome, comprehensive, and wide-ranging, and (2) did not reveal any evidence of misappropriation, access, or misuse. Dkt. No. 99-2 at 12-13; *see also* Dkt. No. 142 at 20:24-21:22 (statements go beyond the factual "the files don't exist" and instead relate the opinion that there is "no evidence that [Valeo code] was ever disclosed"), 24:23-25 ("[I]f it's [Ms. Morrison's] opinion about how comprehensive the search was, then . . . the only basis for her having that opinion would be as a lawyer."). NVIDIA denies that it has relied, or will rely, on the opinions or conclusions of its in-house counsel. Dkt. No. 102 at 10-13.

The Court agrees with NVIDIA. As a general matter, a waiver of fact work product does not automatically extend to opinion work product, which typically includes counsel's mental impressions, conclusions, opinions, or legal theories. *See* Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of [work product], it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2016 WL 4191612, at *22 (N.D. Cal. Aug. 9, 2016) ("Opinion work product 'receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances.'"). Opinion work product *may* be waived where "a party affirmatively places attorney opinions at issue . . . or engages in selective disclosure," such as where "a party intentionally disclos[es] materials helpful to its case while . . . conceal[ing[ detrimental information on the same topic." *Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*, No. 11-cv-5200 JSC, 2012 WL 3062294, at *7 (N.D. Cal. July 26, 2012). Here, in-house counsel's description of the investigation as "extensive" and similar characterizations cannot fairly be described as a disclosure of opinion, and the Court is not persuaded that NVIDIA's affirmative defenses necessarily put its in-house counsel's opinions or advice at issue. As for NVIDIA's responses to Valeo's

13

interrogatories describing the outcome of the investigation, these responses likewise state factual conclusions or contentions—namely, that the investigation revealed "no copies of the allegedly retained Valeo code and no evidence that Mr. Moniruzzaman disclosed the allegedly retained Valeo code or any Valeo Trade Secret to any NVIDIA employee"—that do not reveal or necessarily depend upon counsel's opinions or advice. *See* Dkt. No. 117-3 at 24.

Accordingly, if NVIDIA is withholding from production documents responsive to RFP 79 on the basis of attorney work product, it may not do so to the extent those documents include factual information commensurate with the disclosures made by NVIDIA employees, including its in-house counsel, in the affidavits filed with the German court. If the documents contain fact work product that is intertwined with opinion work product, only those portions of the documents comprising fact work product must be produced to Valeo; NVIDIA may redact the portions containing opinion work product.

### C.     Waiver of Attorney-Client Privilege

Valeo also argues that NVIDIA has waived its attorney-client privilege with respect to its investigation of Mr. Moniruzzaman's conduct and Valeo's misappropriation claims by relying on the details of the investigation and its results in this action. Dkt. No. 99-2 at 6-9, 11-13. NVIDIA responds that it has not disclosed any privileged communications, and that it has not relied, and will not rely, on any advice or opinion of counsel in defending against Valeo's claims. Dkt. No. 102 at 7-8, 10-13.

The Court first considers whether NVIDIA has expressly waived the attorney-client privilege by disclosing a privileged communication to a third party who is not within the scope of the privilege. The record reflects that, at a minimum, NVIDIA has expressly waived the attorney-client privilege with respect to Mr. Chandler's communications with NVIDIA employees, the contents of which are disclosed in Mr. Chandler's affidavit filed in the German court. In view of this disclosure, NVIDIA may not protect these communications from disclosure by asserting they are privileged. *See Bittaker*, 331 F.3d at 719. All of the communications Mr. Chandler described in his affidavit must be produced in their entirety. The Court is not aware of any other express waivers by NVIDIA of its attorney-client privilege. However, as noted above, the Court is

skeptical of NVIDIA's claim that no non-privileged records responsive to RFP 79 exist with respect to those portions of the investigation conducted by non-attorney NVIDIA employees, such as Mr. Recla and his subordinates. The Court reminds NVIDIA that a communication is not privileged merely because an attorney is copied on it; nor does the privilege encompass a record that is attached to, linked with, or pasted into a communication seeking advice of counsel, where the record itself is not privileged. *See, e.g, In re Google Play Store Antitrust Litig.*, No. 20-cv-05671-JD, 2024 WL 3302068, at *14 (N.D. Cal. July 3, 2024) (admonishing defendant Google re abuse of the attorney-client privilege).

The Court next considers whether NVIDIA has impliedly waived the attorney-client privilege. "Substantial authority holds the attorney-client privilege to be impliedly waived where the client asserts a claim or defense that places at issue the nature of the privileged material." *Bittaker*, 331 F.3d at 719 (citing Christopher B. Mueller & Laird C. Kirkpatrick, Evidence: Practice Under the Rules § 5.30, at 549 (2d ed. 1999)). Valeo has not shown that NVIDIA's defenses in this action necessarily depend upon counsel's opinions or advice, and NVIDIA has disavowed any intention to rely on advice of counsel in its defense. As explained above, the Court is not persuaded that NVIDIA's in-house counsel's characterizations of the investigation amount to a disclosure of attorney opinion or advice, or that NVIDIA has otherwise put its in-house counsel's opinions or advice at issue. However, if it develops that NVIDIA's subjective beliefs about the reliability of its investigation were informed by attorney advice, and if these subjective beliefs turn out to be critical to its defenses, such as good faith, then fairness may dictate a disclosure of the underlying advice. *See Lamartina v. VMware, Inc.*, No. 20-cv-02182-EJD (VKD), 2024 WL 3049450, at *6 (N.D. Cal. June 17, 2024) (citing *In re Lidoderm*, 2016 4191612, at *5).

### D. Scope of Waiver or Privilege or Protection

Although the parties did not brief any specific privilege log entries, NVIDIA contends that its log includes at least four categories of information that are necessarily protected from disclosure by the attorney-client privilege or the attorney work product doctrine. These categories are:

1. communications between NVIDIA's legal team and its outside counsel regarding the investigation into Mr. Moniruzzaman's conduct;

2. the exchange of drafts of filings to be made with the German court in response to Valeo's civil actions against NVIDIA;

3. communications between NVIDIA employees and NVIDIA's legal team regarding the employees' contacts and communications with Mr. Moniruzzaman related to Valeo's allegations; and

4. internal discussions between NVIDIA's legal team and NVIDIA's German outside counsel regarding the strategy for contending with the litigation Valeo brought against NVIDIA in Germany.

Dkt. No. 102-1 ¶ 7. During the hearing on its motion, Valeo asserted that NVIDIA's privilege log contains a fifth category—investigation notes and search results which are definitely *not* privileged or protected. Dkt. No. 142 at 27:16-19.

In response to questions from the Court, Valeo clarified that it does not seek any documents concerning legal advice on issues of German law, litigation holds, legal strategies and defenses, or other documents reflecting legal advice generally concerning preparation for litigation. Dkt. No. 142 at 27:21-33:9. Instead, Valeo seeks: "every single fact and detail . . . and legal conclusion that NVIDIA relied on to justify" the conclusion that the internal investigation "was thorough" and found no evidence of Valeo source code. *See id.* at 32:13-15, 17-19.

Given the manner in which this dispute was briefed, the Court finds it difficult to definitively exclude or include any of the parties' categories from the scope of the waivers of work product and privilege found in this order. However, it appears that the parties may be able to reach substantial agreement regarding which privilege log entries identify documents that are properly withheld, and the Court orders the parties to confer further on this point, as provided below.

## IV. CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Valeo's motion as set forth above. That is, if NVIDIA is withholding from production documents responsive to RFP 79 on the basis of attorney work product, it may not do so to the extent those documents

include factual information commensurate with the disclosures made by NVIDIA employees, including its in-house counsel, in the affidavits filed with the German court. If the documents contain fact work product that is intertwined with opinion work product, only those portions of the documents comprising fact work product must be produced to Valeo; NVIDIA may redact the portions containing opinion work product. Additionally, NVIDIA may not withhold from production on the basis of attorney-client privilege Mr. Chandler's communications with NVIDIA employees, the contents of which are disclosed in Mr. Chandler's affidavit filed in the German court. All such communications must be produced in their entirety. The parties must confer regarding the remaining entries on NVIDIA's privilege log.

The parties shall file a status report no later than **January 21, 2025**, advising the Court of the status of NVIDIA's compliance with this order. If disputes regarding NVIDIA's privilege log remain, the parties shall include their agreed or respective proposals for resolving the remaining disputes in their status report.

**IT IS SO ORDERED.**

Dated: January 6, 2025

Virginia K. DeMarchi
United States Magistrate Judge

17