Brandon H. Brown, P.C. (SBN 266347)
bhbrown@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Russell E. Levine, P.C. (*pro hac vice*)
russell.levine@kirkland.com
John Lausch, P.C. (*pro hac vice*)
john.lausch@kirkland.com
Molly Kelley (*pro hac vice*)
molly.kelley@kirkland.com
Michael Gremillion (*pro hac vice*)
jacob.gremillion@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Steven Dirks (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. NW
Washington, D.C., 20004
Telephone: (202) 879-5000
Facsimile: (202) 389-5200

*Attorneys for Plaintiff Valeo Schalter und
Sensoren GmbH*

[*Additional counsel listed on signature page*]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Valeo Schalter und Sensoren GmbH, | Case No. 5:23-cv-05721-NW-VKD |
| Plaintiff, | **VALEO'S OPPOSITION TO NVIDIA'S MOTION TO EXCLUDE OPINIONS OF JAMES MALACKOWSKI** |
| v. | |
| NVIDIA Corporation, | |
| Defendant. | Judge:        The Hon. Noël Wise |
| | Courtroom:    8, 4th Floor |
| | Hearing Date: Sept. 17, 2025 |
| | Hearing Time: 9:00 am |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION..................................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ...................................................................1

LEGAL STANDARDS ........................................................................................................1

FACTUAL BACKGROUND ...............................................................................................3

I.  THE MERCEDES-BENZ AGREEMENT AND FORECASTED SALES ....................3

II.  VALEO'S TRADE SECRET MISAPPROPRIATION ALLEGATIONS ......................5

III.  NVIDIA DOES NOT CHALLENGE MR. MALACKOWSKI'S EXPERTISE TO OFFER HIS DAMAGES OPINIONS....................................................................................5

ARGUMENT ........................................................................................................................6

I.  MR. MALACKOWSKI'S OPINIONS REGARDING NVIDIA'S UNJUST ENRICHMENT FROM PROFITS RECEIVED FROM CONTRACTS ARE ADMISSIBLE. ......................................................................................................................6

    A.  Unjust Enrichment Damages Based on Future Earnings Are Permissible.........6

        1.  A "flexible and imaginative approach to the problem of damages" is warranted in this case.....................................................................................7

        2.  NVIDIA's cited cases do not support its argument that unjust enrichment based on future profits are unrecoverable "as a matter of law."..............................................................................................................8

    B.  Mr. Malackowski Properly Applied Accepted Methodology to the Facts of This Case.........................................................................................................10

II.  MR. MALACKOWSKI'S APPORTIONMENT OPINIONS ARE ADMISSIBLE. ....................................................................................................................14

    A.  Mr. Malackowski's Opinions Properly Apportion NVIDIA's Revenues Under The MB Contract To The Parking Revenues Attributable To The Asserted Trade Secrets. ...............................................................................14

        1.  Mr. Malackowski's opinion apportioning NVIDIA's revenue to the entire value of NVIDIA's parking solution is based on sufficient facts and data. ......................................................................................................15

        2.  Dr. Johnson-Roberson's opinions provide support for Mr. Malackowski opinion apportioning NVIDIA's revenue to the entire value of NVIDIA's parking solution. .......................................................18

VALEO'S OPPOSITION TO NVIDIA'S MOTION
TO EXCLUDE TESTIMONY OF JAMES MALACKOWSKI

CASE NO. 5:23-CV-05721-NW

**B.** **Mr. Malackowski's Opined On The Relative Value Of The Asserted Trade Secrets Used In NVIDIA's Parking Software.** ....................................... 19

**III.** **MR. MALACKOWSKI DOES NOT OFFER TECHNICAL OPINIONS.** .................. 21

**A.** **Mr. Malackowski Properly Relied On Dr. Johnson-Roberson To Relate The Asserted Trade Secrets to ECFs.** ...................................... 21

**B.** **Section 9.2 Of Mr. Malackowski's Report Should Not Be Excluded.** ................ 22

**CONCLUSION** ............................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3D Sys., Inc. v. Wynne*,
   2025 WL 886958 (S.D. Cal. Mar. 20, 2025) ...................................................16, 17, 18

*ABS Global, Inc. v. Inguran, LLC*,
   2019 WL 3984373 (W.D. Wis. Aug. 23, 2019).........................................................19

*AccuImage Diagnostics Corp v. Terarecon, Inc.*,
   260 F. Supp. 2d 941 (N.D. Cal. 2003) .......................................................................8

*Alpha GRP, Inc. v. Subaru of Am., Inc.*,
   2021 WL 6103548 (C.D. Cal. Nov. 17, 2021) ......................................................9, 10

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014)................................................................................21

*Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*,
   377 F. Supp. 3d 990 (N.D. Cal. 2019) .....................................................................21

*ATS Prods. Inc. v. Ghiorso*,
   2012 WL 253315 (N.D. Cal. Jan. 26, 2012) ........................................................6, 20

*Aya Healthcare Svs., Inc. v. AMN Healthcare, Inc.*,
   613 F. Supp. 3d 1308 (S.D. Cal. 2020), *aff'd* 9 F.4th 1102 (9th Cir. 2021) ...............23

*B. Braun Med., Inc. v. Rogers*,
   163 F. App'x 500 (9th Cir. 2006) ..............................................................................7

*Bally v. State Farm Life Ins. Co.*,
   2022 WL 594798 (N.D. Cal. Feb. 24, 2022) ..............................................................2

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
   20 F.4th 1231 (9th Cir. 2021) ..................................................................................17

*Bose Corp. v. JBL, Inc.*,
   274 F.3d 1354 (Fed. Cir. 2001)..........................................................................16, 17

*Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*,
   53 F.4th 368 (6th Cir. 2022) ......................................................................................6

*Coastland Corp. v. Third Nat. Mortg. Co.*,
   611 F.2d 969 (4th Cir. 1979) ...........................................................................9, 12, 18

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)..............................................................................................1, 2

iii

**TABLE OF AUTHORITIES (CONT'D)**

Page(s)

*EchoSpan, Inc. v. Medallia, Inc.*,
   2023 WL 9502960 (N.D. Cal. Oct. 10, 2023)...........................................................2, 5

*EcoFactor, Inc. v. Google LLC*,
   No. 2023-1101, slip .....................................................................................................3

*Elec. Funds Sols., LLC v. Murphy*,
   134 Cal. App. 4th 1161 (2005) ...................................................................................9

*Elosu v. Middlefork Ranch Inc.*,
   26 F.4th 1017 (9th Cir. 2022) ..........................................................................*passim*

*Ford Motor Co. v. Versata Software, Inc.*,
   2018 WL 10733561 (E.D. Mich. July 9, 2018) ........................................................19

*Hilderman v. Enea Teksci, Inc.*,
   2010 WL 546140 (S.D. Cal. Feb. 10, 2010) ............................................................17

*Kids' Universe v. In2Labs*,
   95 Cal. App. 4th 870 (2002) .......................................................................................9

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).................................................................................17

*Macmorris Sales Corp. v. Kozak*,
   263 Cal. App. 2d 430, 69 Cal. Rptr. 719 (1968) ........................................................9

*Master Replicas, Inc. v. Levitation Arts, Inc.*,
   2009 WL 10670674 (C.D. Cal. May 13, 2009) ......................................................8, 9

*Medidata Sols., Inc. v. Veeva Sys., Inc.*,
   2021 WL 4243309 (S.D.N.Y. Aug. 25, 2021) ...........................................................8

*Messick v. Novartis Pharms. Corp.*,
   747 F.3d 1193 (9th Cir. 2014) ...................................................................................2

*Minn. Mining & Mfg. Co. v. Johnson & Johnson, Orthopaedics, Inc.*,
   976 F.2d 1559 (Fed. Cir. 1992)...................................................................................6

*Motorola Solutions, Inc. v. Hytera Comm'ns Corp. Ltd.*,
   108 F.4th 458 (7th Cir. 2024) ...................................................................................14

*Pawelko v. Hasbro, Inc.*,
   2020 WL 42451 (D.R.I. Jan. 3, 2020) .....................................................................16

*Plantronics, Inc. v. Aliph, Inc.*,
   2014 WL 691193 (N.D. Cal. Feb. 21, 2014) .....................................................16, 18

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) .....................................................................................2

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Proofpoint, Inc. v. Vade Secure, Inc.*,
    2023 WL 4475587 (N.D. Cal. July 10, 2023) ...................................................................8

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*,
    870 F.3d 1262 (11th Cir. 2017) ......................................................................................7

*Rubalcava v. Perez*,
    2024 WL 3012808 (N.D. Cal. June 14, 2024) ...............................................................14

*Siquieros v. General Motors LLC*,
    2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ........................................................................2

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
    2021 WL 4913509 (C.D. Cal. Sept. 8, 2021) ......................................................15, 17, 20

*Stepien v. Raimondo*,
    2024 WL 4043589 (W.D. Wash. Sept. 4, 2024), reconsideration denied, 2024 WL
    5169969 (W.D. Wash. Dec. 19, 2024).........................................................................23

*Steves and Sons, Inc. v. JELD-WEN, Inc.*,
    2018 WL 2172502 (E.D. Va. May 10, 2018) ..................................................................7

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
    70 F.4th 759 (4th Cir. 2023) ........................................................................................19

*Tavantzis v. American Airlines, Inc.*,
    2025 WL 1331620 (N.D. Cal. May 7, 2025) ...................................................................2

*Teradata Corp. v. SAP SE*,
    124 F.4th 555 (9th Cir. 2024) .....................................................................................1, 2

*United States v. Ruvalcaba-Garcia*,
    923 F.3d 1183 (9th Cir. 2019) .......................................................................................2

**Statutes**

17 U.S.C. § 504(b) ...............................................................................................................14, 17

**Rules**

Fed. R. Evid. 702 ........................................................................................................... *passim*

Fed. R. Evid. 703 ......................................................................................................................21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

NVIDIA seeks to avoid any consequences for its actions by moving to exclude the opinions James Malackowski, including ***all*** of his calculations of the damages owed to Valeo should NVIDIA be found liable for misappropriating Valeo's trade secrets. Contrary to NVIDIA's arguments, the opinions NVIDIA seeks to exclude—including Mr. Malackowski's calculation of damages as set forth in Sections 11 and 12 of his report—are based on sufficient facts and data, the product of reliable principles and methods, and properly apply those reliable principles and methods to the facts of the case. NVIDIA primarily disputes the facts on which Mr. Malackowski relies, not his methodology, but those facts are properly rooted in the record. Thus, to support its argument, NVIDIA puts its head in the sand regarding its contract with Mercedes-Benz and the financial terms and projections in that contract, and mischaracterizes Mr. Malackowski's report and deposition testimony. NVIDIA's disputes with the facts, and its attempt to ignore and/or change them, does not warrant excluding Mr. Malackowski's opinions. Rather, these factual disputes, and NVIDIA's arguments about them, go to the weight the jury should accord Mr. Malackowski's opinions. *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025-26 (9th Cir. 2022) (whether expert's "hypothesis is correct" or is "corroborated by other evidence on the record" is "for the litigants to argue, and for the jury to decide"). NVIDIA's Motion should be denied.

## STATEMENT OF ISSUES TO BE DECIDED

Whether NVIDIA's Motion to Exclude the Testimony of James Malackowski ("Motion") seeking to exclude the opinions of Mr. Malackowski as set forth in Sections 7, 9.2, 11, and 12 of his report (Dkt. 265 at Notice of Motion) should be denied and his testimony admitted because: (1) NVIDIA's arguments are not supported by the facts or by the law; (2) NVIDIA's arguments go to the weight to be accorded Mr. Malackowski's opinions, not their admissibility; and (3) Mr. Malackowski's opinions, and the methodology on which they are based, are relevant and reliable.

## LEGAL STANDARDS

Expert testimony is admissible under Federal Rule of Evidence 702 so long as it is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 589 (1993); *Teradata Corp. v. SAP SE*, 124 F.4th 555, 566 (9th Cir. 2024). "The relevancy bar is low, demanding only that the evidence

'logically advances a material aspect of the proposing party's case.'" *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196-97 (9th Cir. 2014) (internal cites omitted) (reversing district court's exclusion of expert where the district court "applied too high a relevancy bar"). Reliability is a "malleable" analysis, requiring only that the expert's testimony have "a reliable basis in the knowledge and experience of the relevant discipline." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188-89 (9th Cir. 2019). If an expert's opinion clears the bar of relevancy and reliability, the opposing party's challenges to its conclusions must go to the jury. *Messick*, 747 F.3d at 1199. Questions regarding the nature of an expert's evidence goes more to the 'weight' of their testimony—an issue properly explored during direct and cross-examination—not its admissibility. *Teradata Corp.*, 124 F.4th at 568 (reversing for improper exclusion of expert testimony); *Elosu*, 26 F.4th at 1026 (same); *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (same).

"Rule 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Elosu*, 26 F.4th at 1026 (whether expert's "hypothesis is correct" or "corroborated by other evidence on the record" is "for the litigants to argue, and for the jury to decide"). Courts in this district routinely deny *Daubert* motions where, as here, the real dispute between the parties is how much weight the jury should accord the expert's opinions. *See, e.g.*, *Tavantzis v. American Airlines, Inc.*, 2025 WL 1331620, *6 (N.D. Cal. May 7, 2025) ("remaining arguments go to the weight, not the admissibility," of expert's opinions and will not be excluded on those grounds); *EchoSpan, Inc. v. Medallia, Inc.*, 2023 WL 9502960, at *1 (N.D. Cal. Oct. 10, 2023) (denying motions to exclude experts in trade secret misappropriation case because "the motions go more to the weight and credibility of these witnesses rather than the admissibility of the anticipated expert testimony"); *Bally v. State Farm Life Ins. Co.*, 2022 WL 594798, at *2 (N.D. Cal. Feb. 24, 2022) ("vigorous cross-examination and presentation of contrary evidence" are the appropriate means of challenging damages expert's report) (internal quotations omitted); *Siqueiros v. General Motors LLC*, 2022 WL 74182, at *10-11 (N.D. Cal. Jan. 7, 2022) (disagreement with assumptions and technical expert's opinion "go to impeachment, not admissibility").

The Federal Circuit's recent opinion granting a defendant a new trial on damages is inapplicable to this case. The Federal Circuit stated that the 2023 amendment to Federal Rule of Evidence 702 "did not substantively change the relevant standard," and reasserted the principles that patent damages involve degree of approximation and uncertainty and "damages experts may properly give testimony resulting in contradictory [damages] based on the same set of facts." *EcoFactor, Inc. v. Google LLC*, No. 2023-1101, slip opinion at 8 n.8, 10 (Fed. Cir. May 21, 2025). However, the "plain language of the license agreements" on which plaintiff's expert premised his reasonable royalty rate "does not support" the expert's testimony that the licensees "agreed to pay the $X per unit royalty rate," and two of those three license agreements "expressly disavow it." *Id.* at 15. Unlike here, *EcoFactor* "is not a case where the relevant evidence can reasonably support competing conclusions. Whether prior licensees agreed to pay the $X rate was not the subject of estimation or approximation" in the plaintiff's expert's analysis. *Id.* at 21.

## FACTUAL BACKGROUND

## I.    THE MERCEDES-BENZ AGREEMENT AND FORECASTED SALES

On June 8, 2020, NVIDIA and Mercedes-Benz AG ("MB") signed a Memorandum of Understanding for a fifteen-year project for software-defined cars with a projected sales volume of ███ ██████ Ex. A at 533. Under this agreement, NVIDIA would be entitled to ███████ ████████████████████████████████████████. *Id.* at 535. In 2020, MB projected ███████ in revenue for parking functionality alone. *Id.* at 542. The subsequent Cooperation Agreement between NVIDIA and MB has these same basic terms. *See generally* Dkt. 265, Ex. 1. ████████████████████████████████████████████████████████████████ ████████████████████████████. *See id.* at 3500-3501 ██████████ 3509-3510 ████████████ 3590 █████████████ ██████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████. *Id.* at 3594. ██████████████████████████████████████████████████████████████ ████████████████████████████████ *Id.* at 3365. ██████████████████████████████████████████████████████████████

1      ." *Id.* at 3364. ████████

2 ████████████████████████████████████████████

3 ████████████████ *Id.* at 3365. Accordingly, the Cooperation

4 Agreement between NVIDIA and MB was always based ██████████████

5 ██████████████████

6      Start of Production ("SOP") under the Cooperation Agreement between NVIDIA and MB was

7 projected for ████████████ . Dkt. 265, Ex. 2 at 324:13-325:4. While NVIDIA contends

8 MB has not sold vehicles under the Agreement yet, there is no dispute that the Cooperation Agreement

9 remains in effect. *Id.* at 268:4-269:18, 324:9-12; Dkt. 265 at 4.

10      During development of NVIDIA's NDAS system for MB, NVIDIA and MB both recognized

11 that NVIDIA had problems with its parking functionality. ██████████████

12 ████████████████████████████████████████████

13 ████ . Ex. B at 272. ████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████████████████████ *Id.* at 270-71. Mr.

16 ████████████████████████████████████ *Id.* at 269. ████

17 ████████████████████████████████████████████

18 ████ *Id.* at 263. █████████████████████████████

19 ████████████████████████████████████ . *Id.* at ████

20 ████████████████████████████████████████████

21 ████████████████████████████████████████████

22 ████████████████████████████████████ *Id.* at 263. ████

23 ████████████████████████████████████████ Dkt. 265, Ex. 8.

24 ████████████████████████████████████████████

25 NVIDIA then met MB's deadline for parking by providing a system to MB that included Valeo's trade

26 secrets.

27

28

## II.    VALEO'S TRADE SECRET MISAPPROPRIATION ALLEGATIONS

Suffice it to say Valeo disputes NVIDIA's recitation of the facts leading to this lawsuit. *See* Dkt. 265 at 4-5. The details of NVIDIA's misappropriation are not relevant to its Motion, however, as Mr. Malackowski's analysis is premised on NVIDIA's liability. Dkt. 265, Ex. 10 at 4; *EchoSpan,* 2023 WL 9502960, at *2 (damages expert can assume liability). What is relevant for this Motion is Valeo' assertion of Trade Secret Nos. 3, 4, 8, 9, 10, 11, and 12 ("Asserted Trade Secrets"). Dkt. 225; Dkt. 263-10 (Valeo's Third Amended § 2019.210 Trade Secret Disclosure). Valeo further asserts that four of those Asserted Trade Secrets ███████████████████████████████████████ ████████████████████████████████ are currently implemented by NVIDIA "within its parking solution software." Dkt. 265, Ex. 10 at 7.

## III.    NVIDIA DOES NOT CHALLENGE MR. MALACKOWSKI'S EXPERTISE

Mr. Malackowski is the Co-Founder and Senior Managing Director of Ocean Tomo, LLC, which provides Financial Expert, Management Consulting, and Advisory services related to intellectual property. Dkt. 265, Ex. 10 at 3. He was inducted into the IP Hall of Fame in 2022 and has been recognized for his significant contributions to the understanding of IP as a business asset. *Id*. He has been consistently recognized as one of the "World's Leading IP Strategists'" and is a leading global Economics Expert Witness. *Id*. On over 100 occasions, he has served as an expert on questions relating to IP economics including valuation, reasonable royalty, and licensing terms. *Id*. at 3.

Mr. Malackowski has analyzed the accounting, financial, economic, and other business information in this case to assess the monetary recovery due Valeo, assuming NVIDIA misappropriated and used Valeo's Asserted Trade Secrets. *Id.* at 4. Mr. Malackowski opined that Valeo's damages would take the form of unjust enrichment (from specific contracts and avoided development costs) or a reasonable royalty for NVIDIA's misappropriation. *Id.* at 6-7. In forming his opinions, he relied upon documents produced by the parties, deposition transcripts of the parties' witnesses and exhibits thereto, publicly available information regarding the parties, the expert reports of Valeo's other experts, and discussions with Valeo personnel and Valeo's expert Dr. Matthew Johnson-Roberson. *Id.* at 5. Further details regarding Mr. Malackowski's opinions are discussed as relevant in the argument sections below.

1

## ARGUMENT

2        NVIDIA was awarded the MB contract on the basis that it could provide a full NDAS solution,

3   including parking. *See generally* Dkt. 265, Ex. 1. NVIDIA stood to lose the entirety of the parking

4   revenue under the contract if it could not deliver the USS-based software needed for parking

5   functionality. Ex. B. NVIDIA assured MB that it could perform under the contract and meet those

6   deadlines, but to do so and retain MB's business, NVIDIA required the use Valeo's trade secrets.

7   NVIDIA now argues that it should owe ***nothing*** for its misappropriation and use of Valeo's trade

8   secrets. That is not the law, and NVIDIA's Motion should be denied.

9   **I.    MR.   MALACKOWSKI'S   OPINIONS   REGARDING   NVIDIA'S   UNJUST
         ENRICHMENT   FROM   PROFITS   RECEIVED   FROM   CONTRACTS   ARE
10       ADMISSIBLE.**

11       NVIDIA's assertion that, "[a]s a matter of law," damages based on future profits "are not

12  recoverable as unjust enrichment" is incorrect. Dkt. 265 at 8. The appropriate measure of damages for

13  trade  secret  misappropriation  depends  on  the  facts  and  circumstances  of  a  given  case.

14  Mr. Malackowski's opinions regarding NVIDIA's unjust enrichment from profits received from

15  contracts are rooted in the particular facts of this case, based on sufficient facts and data, and apply a

16  relevant methodology. Thus, there is no basis to exclude the opinions given in Section 11.2 of

17  Mr. Malackowski's report as NVIDIA requests. Dkt. 265 at Notice of Motion. And NVIDIA's request

18  to exclude the opinions in Section 11.5 of Mr. Malackowski's report based on this same argument (*id.*)

19  must be rejected because that section bears no relation to future profits. Dkt. 265, Ex. 10 at 96-67.

20       **A.    Unjust Enrichment Damages Based on Future Earnings Are Permissible.**

21       Every trade secret case "requires a flexible and imaginative approach to the problem of

22  damages" and is "controlled by its own peculiar facts and circumstances." *Caudill Seed & Warehouse*

23  *Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 391 (6th Cir. 2022) (internal citations omitted). "This

24  flexibility means that the plaintiff is required to prove the amount of such loss with only as much

25  certainty as is reasonable under the circumstances." *Id.* at 387 (internal citation omitted); *see also*

26  *Minn. Mining & Mfg. Co. v. Johnson & Johnson, Orthopaedics, Inc.*, 976 F.2d 1559, 1578-79 (Fed.

27  Cir. 1992) ("Although damages may not be based on speculation, they need not be proved with

28  unerring precision either."); *ATS Prods. Inc. v. Ghiorso*, 2012 WL 253315, at *1 (N.D. Cal. Jan. 26,

2012) (damages "need not be calculated with absolute precision" and "need only rest on a 'reasonable basis'"). "Unjust enrichment generally 'requires a showing that a plaintiff conferred a benefit on a defendant that the defendant knew about and that allowing the defendant to retain the benefit without payment would be unjust.'" *Steves and Sons, Inc. v. JELD-WEN, Inc.*, 2018 WL 2172502, at *6 (E.D. Va. May 10, 2018) (quoting *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 870 F.3d 1262, 1277 (11th Cir. 2017). "Accordingly, in the trade secret misappropriation context, the proper measure of unjust enrichment damages is 'the total gains of [a defendant's] wrongdoing.'" *Id.* (citation omitted).

### 1.  *A "flexible and imaginative approach to the problem of damages" is warranted in this case.*

Damages based on "expected profits within a business model" are not inherently speculative. *See Steves and Sons*, 2018 WL 2172502, at *7. Where damages calculations based on estimates do not involve "untested products, an unknown market, or an unproven enterprise," they are "not very speculative." *Id.* (even where there is "some guesswork," that "minor uncertainty does not undermine the other, stronger assumptions"). "A jury could rely on" evidence of expected profits within a business model to determine damages for trade secret misappropriation. *Id.* Indeed, the Ninth Circuit has affirmed an award of "future damages for misappropriation of trade secrets." *B. Braun Med., Inc. v. Rogers*, 163 F. App'x 500, 503 (9th Cir. 2006) (reinstating jury's $2.5 million future damage award).

The unique facts of this case—where NVIDIA has a contract under which it will receive revenue from MB, but litigation commenced and discovery closed prior to product launch—warrant a "flexible and imaginative" approach. As discussed further below (*see infra* § I.B), Mr. Malackowski's unjust enrichment from profits received from contracts calculations are based on evidence of NVIDIA's expected profits from MB's established business model. There can be no dispute that MB is a "proven enterprise," as it has been selling vehicles for over 100 years. MB has also been selling subscription software for its vehicles, demonstrating that there is a known market for NVIDIA's product. *See* Dkt. 265, Ex. 10 at 76. NVIDIA concedes that in what it terms "exceptional circumstances," courts award damages based on future success when there is "evidence that such results have been achieved in the past." Dkt. 265 at 9. Even NVIDIA's damages expert, Patrick

1    Kennedy, agrees that ███████████████████████████████████████████████
2    ████████████████████████████████.” Ex. C at 91:15-92:4. This is just such a case, and NVIDIA's
3    complaints about Mr. Malackowski's opinions actually turn on its dispute with the facts on which he
4    relies, not his methodology. But whether Mr. Malackowski's analysis is correct "is for the litigants to
5    argue, and for the jury to decide." *Elosu*, 26 F.4th at 1025-26.

   ### 2.    *NVIDIA's cited cases do not support its argument that unjust enrichment based on future profits are unrecoverable "as a matter of law."*

7        None of NVIDIA's cases support its contention that Valeo is barred from recovering unjust
8    enrichment damages based on future profits received under specific contracts. While *Medidata*
9    excluded testimony based on "hypothetical future profits," the court noted that "unjust enrichment
10   requires a benefit already conferred." *Medidata Sols., Inc. v. Veeva Sys., Inc.*, 2021 WL 4243309, at
11   *4 (S.D.N.Y. Aug. 25, 2021). Similarly, in *AccuImage*, the plaintiff failed to "allege *any* specific facts
12   regarding the amount of benefit that [the defendant] received." *AccuImage Diagnostics Corp v.
13   Terarecon, Inc.*, 260 F. Supp. 2d 941, 958 (N.D. Cal. 2003). By contrast to these cases, the benefit of
14   retaining the MB agreement, including the projected parking revenue, *has* already been conferred on
15   NVIDIA from its misappropriation. By using Valeo's Asserted Trade Secrets, NVIDIA retained the
16   right to ███████████ for parking features. *See generally* Dkt. 265, Ex. 10.

17       *ProofPoint* is inapplicable. In *ProofPoint*, the court granted relief from judgment where the
18   jury awarded unjust enrichment damages "jointly and severally against all defendants," but there was
19   no evidence that all of the defendants benefited from the misappropriation. *Proofpoint, Inc. v. Vade
20   Secure, Inc.*, 2023 WL 4475587, at *1-3 (N.D. Cal. July 10, 2023). The court concluded that it is
21   improper to hold "[one defendant] liable, under a theory of unjust enrichment, for property or benefits
22   realized by the [other defendants] only." *Id*. at *3. *ProofPoint* does not even consider whether unjust
23   enrichment damages can be based on forecasted revenues.

24       Moreover, NVIDIA's assertion that this is a "new venture" is not grounded in fact. In *Master
25   Replicas*, the court denied lost profits based on projections that were "contingent on the actual
26   development of the product for market, which to date, [had] not occurred." *Master Replicas, Inc. v.
27   Levitation Arts, Inc.*, 2009 WL 10670674, at *6 (C.D. Cal. May 13, 2009). Here, by contrast, SOP for

28

NVIDIA's parking solution under the MB contract is projected for ███████████████ and NVIDIA ███████████████████████████." Dkt. 265, Ex. 2 at 324:13-325:4. Further, "[u]nestablished businesses have been permitted to claim lost profit damages in situations where owners have experience in the business they are seeking to establish, and where the business is in an established market." *Master Replicas*, 2009 WL 10670674, at *8. Mr. Malackowski based his unjust enrichment opinions on facts and data showing that there is a well-established market for vehicles with ADAS features, and MB has experience in that market. *See infra* § I.B; Dkt. 265, Ex. 10 at 83-84.

NVIDIA's argument that unjust enrichment damages based on future profits are not recoverable as a matter of law is not born out, and its remaining cases do not require the exclusion of projections for participants in such a well-established market. *See Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 883 (2002) ("anticipated profits dependent upon future events are allowed where their nature and occurrence can be shown by evidence of reasonable reliability"); *Macmorris Sales Corp. v. Kozak*, 263 Cal. App. 2d 430, 443, 69 Cal. Rptr. 719, 727 (1968) (denying lost profits where there was "no substantial evidence in the record to demonstrate … experience or business conditions … could be applied properly to [a] new corporation"). NVIDIA even cites an out-of-circuit case that is over 45 years old and does not consider what evidence, if any, could render anticipated profits reasonably certain. *See Coastland Corp. v. Third Nat. Mortg. Co.*, 611 F.2d 969, 978 (4th Cir. 1979).

NVIDIA's own cases confirm that damages based on future expected profits *are* recoverable, even for an unestablished business. "For an unestablished business … lost profits *are recoverable[1]* if based on reasonably reliable evidence." *Alpha GRP, Inc. v. Subaru of Am., Inc.*, 2021 WL 6103548, at *4 (C.D. Cal. Nov. 17, 2021); *see also Elec. Funds Sols., LLC v. Murphy*, 134 Cal. App. 4th 1161, 1181 (2005) ("where the operation of an unestablished business is prevented or interrupted ... *anticipated profits* dependent upon future events *are allowed* where their nature and occurrence can be shown by evidence of reasonable reliability.") (citation omitted). As these cases make clear, plaintiffs are not barred from recovering future expected profits "as a matter of law," as NVIDIA

---

[1] All emphasis added unless otherwise noted.

VALEO'S OPPOSITION TO NVIDIA'S MOTION                    CASE NO. 5:23-CV-05721-NW
TO EXCLUDE TESTIMONY OF JAMES MALACKOWSKI

argues. The issue is whether there is reasonably reliable evidence supporting the calculation of those future expected profits. As discussed below (*see infra* § I.B), Mr. Malackowski's opinions are based on reasonably reliable facts and data, and NVIDIA's disputes about those facts do not create an issue with the admissibility of Mr. Malackowski's testimony. *See Elosu*, 26 F.4th at 1026.

Finally, NVIDIA suggests that Mr. Malackowski was required to rely on data from other companies operating similar enterprises. Dkt. 265 at 9-10. However, unlike the plaintiff in *Alpha*, which had never turned a profit, "did not have a single signed contract supporting the future of its [product]," and relied on its own overly-optimistic internal projections, MB has a history of successfully releasing new cars, and ███████████████████████████████████████████ ███████████████████████████████ *See Alpha*, 2021 WL 6103548, at *5. Moreover, here there is ***actual*** data provided by NVIDIA and MB that has independent business relevance. *See infra* § I.B. This independent evidence that NVIDIA and MB both relied on in their business dealings is the best evidence of the value the parties fairly attribute to the technology. Indeed, while any projection necessarily has some uncertainty, ██████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████ *E.g.*, Ex. D at 35:9-36:8, 87:1-20.

## B.    Mr. Malackowski Applied Accepted Methodology to the Facts of This Case.

The crux of NVIDIA's argument is that the projections Mr. Malackowski uses are "speculative" and "hypothetical." However, NVIDIA's own witnesses have testified as to the reliability of the projections Mr. Malackowski uses. Each of the five points NVIDIA raises go to the weight that should be accorded Mr. Malackowski's opinions based on the evidence he used, rather than their admissibility. *See* Dkt. 265 at 10-16. In essence, NVIDIA asks this court to "select between competing versions of the evidence," but that is the role of the jury, not a question of admissibility under Rule 702. *Elosu*, 26 F.4th at 1026.

***First***, as discussed above, there is no bar to calculating unjust enrichment damages based on future successes. *See supra* § I.A. Under NVIDIA's misapplication of the law, companies who misappropriate trade secrets owe ***zero*** damages until they make sales, even if they derive significant benefits from the misappropriated trade secrets. *See* Dkt. 265 at 8 (noting lack of sales-to-date).

NVIDIA's interpretation of the law would incentivize trade secret owners to sit on their rights until sales are made to inflate damages, especially for complex technologies with long design phases like in this case. It would also incentivize companies to misappropriate trade secrets for long-term projects where the first revenue occurs years after engineering begins. NVIDIA should not be able to absolve itself of its bad behavior based on the engineering and sales timeline of the technology it stole and its "net loss" at this preliminary stage of the contract.

  ***Second***, this is not a new venture for MB. *See* Dkt. 265 at 11. NVIDIA points to the fact this is its first commercial development of a ▮▮▮▮▮▮▮▮▮▮▮▮▮, ignoring that MB has a substantial history of selling vehicles, as well as ADAS parking functionality, and has associated market data about those sales. MB has been selling automobiles for over 100 years and software defined features for decades. Dkt. 265, Ex. 10 at 76 (collecting evidence). It regularly releases new lines of vehicles that feature new technologies, and thus this is simply a continuation in the evolution of a long-established business rather than a new venture. By March of 2022, MB was so experienced in parking that it presented its own "▮▮▮▮▮▮▮▮▮▮▮▮" to NVIDIA, where it indicated that ▮▮▮▮▮▮▮▮▮▮." Ex. E at 209. It then presented improvements it wanted for ▮▮▮▮ parking. *Id*. at 219. By March of 2023, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 265, Ex. 10 at 116; Ex. F at 623. Indeed, the market for ADAS systems with parking assist features is so well-established that NVIDIA was able to compile a list of ADAS packages for sale. ▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 265, Ex. 10 at 83-84; Ex. G. ▮▮▮▮▮▮▮▮▮ Ex. G at 845. This is far from a new venture for MB, the entity who prepared the projections on which Mr. Malackowski relies.

  Any claim that this is a new venture for NVIDIA is also exaggerated. NVIDIA is not new to the automotive industry and has been selling SoCs to automakers since at least 2011. Ex. C at 139:13-23. NVIDIA consistently makes and relies on sales volume forecasts to make enough chips to supply its automotive customers. ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, Ex. H at 610. Whether the same accuracy should be expected for NVIDIA's projections of software sales is not relevant, because Mr.

Malackowski's opinion is based on the vehicle volumes and take rates for ADAS parking software that **MB** provides to NVIDIA. Dkt. 265, Ex. 10 at 65; Ex. I at 25:17-26:5. There is no evidence that NVIDIA's parking solution is at risk of never going to market, just attorney argument and speculation that it may be unsuccessful. To the extent NVIDIA contests MB's experience selling software or NVIDIA's ability to accurately project at sales and disagrees with Mr. Malackowski's opinion, the appropriate mechanism to challenge his understanding of the market is through cross examination— not wholesale exclusion of his admittedly sound damages methodology. *See* Ex. C at 100:4-17 (NVIDIA's damages expert testifying that "using future sales" is an available unjust enrichment remedy, and "[t]he jury's assessment of whether there is a sufficient basis for calculating … unjust enrichment based on future sales in this case is going to depend on their assessment of the reliability and uncertainty associated with the projections. So that's their call.").

*Third*, NVIDIA attempts to undermine MB's experience in selling ADAS features by speculating about the future of the market. However, the uncertainty in the market and MB's ability to appropriately price and sell ECFs is already accounted for in the NVIDIA-MB agreement. ███ ████████████████████████████████████████████████████ ██████████████████ Dkt. 265, Ex. 1 at 3594; *see also* Ex. C at 117:2-118:1 ████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ Dkt. 265, Ex. 1 at 3365. This is not a scenario where NVIDIA ████████████████████████████████ and cannot recoup its investment. *See* Dkt. 265 at 13. Instead, the NVIDIA-MB deal reflects two business savvy and experienced corporations contracting to account for the expected risks in the market.

*Fourth*, as discussed above, the NVIDIA-MB agreement already accounts for uncertainty, ████████████████████████████████████████. Dkt. 265, Ex. 1 at 3365, 3594. While at the time of Mr. Malackowski's report, NVIDIA's parking solution had not yet been offered for sale (Dkt. 265 at 13), SOP for NVIDIA's parking solution under the MB contract ██████████████ ████████████ and the solution ████████████████████████████████████ Dkt. 265, Ex. 2 at 324:13-325:4. Moreover, NVIDIA's argument that the industry is moving away from

USS technology ignores that both MB and JLR **require** USS to be used in their vehicle lines and repeatedly insisted on its inclusion. ████████████████████████████████

████████████████████████████████████████████████. Ex. E at 217. ██████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████ Ex. J at 540.

Similarly, JLR currently uses ultrasonic sensors made by Continental. Dkt. 265, Ex. 10 at 58; *see* Ex. K. ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████. Ex. K at 370; Dkt. 265, Ex. 10 at 31, 58. ██████████████████████████████████████

██████ *See* Ex. L[2]. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████ *Id*.

at 449. ██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████████████. Ex. K at 370-71. The facts are clear that OEMs value USS functionality and that USS is necessary for desired parking functionality.

**Fifth**, to the extent NVIDIA's objection to Mr. Malackowski's opinions is based on him using the ████████████████████████████████████ projections instead of some other projection, this is a direct result of NVIDIA's actions. Despite serving interrogatories seeking projections and the basis for projections, requests for production of the same, and **two** motions to compel complete financial information, NVIDIA never provided a complete set of financial documents, including documents containing projections and documents as to how the projections were made. Mr. Heiman testified that the ████████████████████████████████. Ex. I at 131:19-25. Yet several of these reports were never made available and no update after July 2024 was ever produced. As of December 13, 2024, the date of Mr. Kani's deposition (and just over a month before Mr.

---

[2]    Mr. Malackowski considered Exhibit L in preparing his report. Dkt. 265, Ex. 10 at 5-6; Ex. M at Appendix 2 p. 4.

1   Malackowski's report, *see* Dkt. 265, Ex. 10 at cover), NVIDIA had not updated its projections. Dkt.

2   265, Ex. 2 at 273:7-10. ███████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████████ Ex. C at 185:18-186:11,

4   Dkt. 265, Ex. 1 at 3365. To the extent NVIDIA has more recent, or more accurate, projections, it has

5   failed to supplement its production to disclose them, despite Valeo's repeated requests. NVIDIA

6   cannot now blame Mr. Malackowski for relying on the most up-to-date data NVIDIA provided.

7   Ultimately, the five disputes raised by NVIDIA regarding the factual inputs to Mr.

8   Malackowski's opinion go to the weight the jury should afford his conclusion—not its admissibly. *See*

9   *Rubalcava v. Perez*, 2024 WL 3012808, at *2 (N.D. Cal. June 14, 2024) ("so long as an expert's

10  methodology is sound … underlying factual disputes and how much weight to accord the expert's

11  opinion are questions for the jury")

12  ## II.    MR. MALACKOWSKI'S APPORTIONMENT OPINIONS ARE ADMISSIBLE.

13  NVIDIA offers two arguments related to apportionment: (1) whether Mr. Malackowski had a

14  reliable basis to attribute the value of NVIDIA's parking solution to the Asserted Trade Secrets and

15  (2) whether Mr. Malackowski provided a reliable basis for apportioning damages between the

16  Asserted Trade Secrets if not the jury finds not all them were misappropriated. Dkt. 265 at 16. Neither

17  argument has merit, and Mr. Malackowski's apportionment-related opinions should not be excluded.

18  ### A.    Mr. Malackowski Properly Apportioned NVIDIA's Revenues Under The MB Contract To The Parking Revenues Attributable To The Asserted Trade Secrets.

19  When determining unjust enrichment damages caused by a defendant's trade secret

20  misappropriation, "once the plaintiff proves the defendant's total profits caused by the

21  [misappropriation], the defendant has the opportunity to seek apportionment by proving how its own

22  efforts contributed to those profits." *Motorola Solutions, Inc. v. Hytera Comm'ns Corp. Ltd.*, 108 F.4th

23  458, 490 (7th Cir. 2024) (method for calculating damages under Defend Trade Secrets Act "parallels

24  the Copyright Act" as set forth in 17 U.S.C. § 504(b)). "[Valeo] is required to present proof only of

25  [NVIDIA's] gross revenue, and [NVIDIA] is required to prove his or her deductible expenses and the

26  elements of profit attributable to factors other than" the misappropriated trade secrets. *See* 17 U.S.C.

27  § 504(b). "[T]he burden falls on [NVIDIA] to establish any portion of the sales not attributable to the

28

trade secret." *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2021 WL 4913509, at *3 (C.D. Cal. Sept. 8, 2021) (citations omitted).

Based on his conversations with Dr. Johnson-Roberson, Mr. Malackowski opined that the Asserted Trade Secrets used in NVIDIA's parking software, ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████ Dkt. 265, Ex. 10 at 8; *see also id.* at 72. "Accordingly, a substantial causal connection exists between the Asserted Trade Secrets and the expected revenue and profits from NVIDIA's Agreement with Mercedes." *Id.* at 72. To calculate Valeo's unjust enrichment damages, Mr. Malackowski determined NVIDIA's projected revenue from the MB agreement, deducted certain NVIDIA expenses to determine the expected operating profits, discounted those profits to January 2025, and "appl[ied] apportionment metrics … to determine the amount of [those discounted profits] that is attributable to the Asserted Trade Secrets." *Id.* Thus, Mr. Malackowski did apportion his unjust enrichment damages calculation down to the revenue attributable to the parking solution enabled by the Asserted Trade Secrets (and went beyond what is required under the law by deducting NVIDIA's expected COGS and operating expenses from his calculation). NVIDIA's argument is nothing more than an attempt to spin a factual dispute into an argument about the admissibility of Mr. Malackowski's opinions, and should be rejected. *See* Fed. R. Evid. 702, Advisory Committee Notes to 2023 Amendment ("by deciding the disputed facts, the jury can decide which side's expert to credit.").

**1.    *Mr. Malackowski's opinion apportioning NVIDIA's revenue to the entire value of NVIDIA's parking solution is based on sufficient facts and data.***

Contrary to NVIDIA's arguments, Valeo has offered evidence that the entire value of NVIDIA's parking solution is attributable to the Asserted Trade Secrets. Dkt. 265, Ex. 10 at 80-81. Mr. Malackowski opined based on his review of documents and testimony that ███████████████ ████████████████████████████████████████████████████████████ ██████████████████████ *Id.* at 80. ███████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

1    ██████████████████████ *Id*. at 80, Fig. 29 (citing Ex. J (NVIDIA0994538) at 540). ██████

2    ████████████████████████████████████████████████████████████████████████████████

3    ██████████████████████████████████████████████████████████ *Id*. (citing Ex. J

4    (NVIDIA0994538) at 540-542). ████████████████████████████████████████

5    ████████████████████████████████████████████ *Id*. at 82 (citing Ex. B

6    (NVIDIA0502261) at 263). MB's apparent understanding that USS functionality ███████████

7    ██████████████████████████ for the entire project confirms Dr. Johnson-Roberson's opinion that

8    the Asserted Trade Secrets—all of which relate to ultrasonic perception—are crucial to the

9    functionality of NVIDIA's parking solution. Mr. Malackowski relied on these facts in forming his

10   opinion that without the trade secrets NVIDIA's solution would not "work properly" and, accordingly,

11   unjust enrichment should be apportioned to the entirety of parking revenue. Dkt. 265, Ex. 10 at 84.

12   Accordingly, Mr. Malackowski's opinion that apportions unjust enrichment to the projected revenue

13   generated by NVIDIA's parking features is "based on sufficient facts or data." *See* Fed. R. Evid. 702.

14   The fact that JLR's parking solution has value in the market only serves to reinforce the

15   continued value of USS-based parking solutions. NVIDIA's implication that attributing value to JLR

16   somehow requires further apportionment in the MB agreement does not follow. Mr. Malackowski's

17   opinion is based on the enabling nature of the trade secrets that allowed NVIDIA to ████████████

18   ████████████████████████████████████████████████. Dkt. 265, Ex. 10 at 80-

19   82. Whether other USS solutions exist and have value does not detract from the enabling nature of the

20   misappropriated trade secrets used in NVIDIA's USS perception software.

21   Moreover, California courts are clear that the "entire market value rule permits recovery of

22   damages based on the value of a [technology owner's] entire apparatus containing several features

23   when the [allegedly misappropriated technology] is the basis for customer demand." *3D Sys., Inc. v.*

24   *Wynne*, 2025 WL 886958, at *13 (S.D. Cal. Mar. 20, 2025) (citing *Bose Corp. v. JBL, Inc.*, 274 F.3d

25   1354, 1361 (Fed. Cir. 2001)); *Plantronics, Inc. v. Aliph, Inc.*, 2014 WL 691193, at *3 (N.D. Cal. Feb.

26   21, 2014) ("Inextricably intertwined components functioning together can support recognizing the

27   single unit."); *see also Pawelko v. Hasbro, Inc.*, 2020 WL 42451, at *3 (D.R.I. Jan. 3, 2020) ("The

28   entire market rule' typically allows the recovery of damages based on the entire value of an apparatus

16

with several features, even though only one feature is patented" so long as the patent-related feature "is the basis for the customer demand") (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009)). "The fact that there is 'more' to [NVIDIA's parking solution] does not undercut the fact that the alleged trade secrets 'inextricably work' together 'as a single functioning unit' to form [NVIDIA's parking solution]." *3D Sys.*, 2025 WL 886958 at *14. Here, where NVIDIA ***would not have*** a functional parking solution but for its use of the enabling trade secrets, Valeo's technology "contribute[s] substantially" to the "demand" for NVIDIA's parking product. *See id.*; *see also Bose*, 274 F.3d at 1361.

NVIDIA's cases are readily distinguishable. In *Hilderman*, a plaintiff argued that the entire purchase price for a company was attributable to trade secrets despite there being "a great deal of value" in intangible assets unrelated to the trade secrets, which were limited to employee emails and customer lists. *Hilderman v. Enea Teksci, Inc.*, 2010 WL 546140, at *2 (S.D. Cal. Feb. 10, 2010). In *Hilderman*, there was "no basis" to conclude that the full value of the company's intangibles was attributable to the trade secrets because the expert's opinion was "not based on facts or evidence." *Id.* Likewise, the court in *BladeRoom* vacated judgment and remanded for a new trial on several issues, including misappropriation, which was tried on an improper interpretation of contract law. *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231, 1246 (9th Cir. 2021). A concurring opinion wrote that the "entire value" of the sale of an entire division could not be attributed to a trade secret because the "division had business and value that did not involve use of the misappropriated trade secret." *Id.* at 1250 (concurrence). Here, by contrast, Valeo does not seek the entire value of NVIDIA's assets, NVIDIA's automotive division, or even the entire value of the MB contract. Mr. Malackowski's use of the full value of parking is directly grounded in the facts of this case, as explained above. But for NVIDIA's use of the trade secrets, NVIDIA would not earn any parking revenues, and NVIDIA has not proffered any evidence to rebut this.

It is NVIDIA's burden to prove its "deductible expenses and the elements of profit attributable to factors other than" the misappropriated trade secrets. *See* 17 U.S.C. § 504(b). NVIDIA's dispute about the percentage Mr. Malackowski used when performing that apportionment is an issue of the weight to be accorded his testimony, not its admissibility. *See SPS Techs.*, 2021 WL 4913509, at *3

17

("[p]urported deficiencies that may inflate a plaintiffs damages go to the weight of the methodology, not its reliability.") (quotations omitted). NVIDIA's criticisms can be raised through cross-examination and do not warrant exclusion of Mr. Malackowski's opinions. *3D Sys.,* 2025 WL 886958, at *14; *Plantronics*, 2014 WL 691193, at *3.

> **2.** ***Dr. Johnson-Roberson's opinions provide support for Mr. Malackowski opinion apportioning NVIDIA's revenue to the entire value of NVIDIA's parking solution.***

NVIDIA quotes a portion of a single paragraph in Dr. Johnson-Roberson's expert report and an isolated excerpt of Mr. Malackowski's deposition to support its argument that Mr. Malackowski's reliance on Dr. Johnson-Roberson's opinions was improper. Dkt. 265 at 19 (quoting Dkt. 265, Ex. 9 ¶1874 and Dkt. 265, Ex. 3 at 55:20-23). These snippets of testimony do not support NVIDIA's argument.

**First**, the paragraph NVIDIA cites is regarding the *relative* value of the Asserted Trade Secrets, not whether the value of NVIDIA's parking solution is attributable to the Asserted Trade Secrets. *See* Dkt. 265, Ex. 9 ¶1874. This is clear from the two sentences immediately following what NVIDIA quotes:

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████." *Id.*

**Second**, this paragraph does not reflect the full extent of Dr. Johnson-Roberson's opinions. In paragraph 1874, Dr. Johnson-Roberson refers to section VI.E of his report, where he "explained in greater detail" his opinions. *Id.* Section VI.E of Dr. Johnson-Roberson's report includes nearly 50 pages and 100 paragraphs of factual support for his opinion that ████████████████████
████████████████████████████████████████████████." Ex. O ¶¶1761-1860.

**Third**, NVIDIA's isolated quotation of Mr. Malackowski's deposition testimony does not accurately reflect the extent of his testimony regarding his discussions with Dr. Johnson-Roberson. *See* Dkt. 265, Ex. 3 at 51:22-55:4. For example, Mr. Malackowski testified that it is his "understanding that the trade secrets at issue are required, used, necessary, to deliver" the parking functionality, and

that understanding is "based on a conversation [he] had with Dr. Johnson-Roberson" and "described within his report." *Id.* at 52:7-53:11.

Contrary to NVIDIA's argument, Dr. Johnson-Roberson's opinion was not a "conclusory, unsupported assertion," and NVIDIA's comparison of this case to *Ford Motor* is misplaced. Dkt. 265 at 20 (quoting *Ford Motor Co. v. Versata Software, Inc.*, 2018 WL 10733561, at *11-12 (E.D. Mich. July 9, 2018)). There, the technical expert's analysis that "each of the trade secrets was independently necessary … was comprised of a single sentence." *Ford Motor*, 2018 WL 10733561, at *12. Here, Dr. Johnson-Roberson offered a robust analysis, supported by documents and testimony, in support of his opinion that value of NVIDIA's parking revenues are attributable to the Asserted Trade Secrets. Nor is Mr. Malackowski's reliance on Dr. Johnson-Roberson's opinion comparable to the facts in *ABS Global, Inc. v. Inguran, LLC*, 2019 WL 3984373, at *1 (W.D. Wis. Aug. 23, 2019). *See* Dkt. 265 at 20. In that patent infringement case, the technical expert failed to explain the improvement the patented technology offered over existing technology, and thus provided no basis for apportioning the value of the accused product to the patented technology. *ABS Global*, 2019 WL 3984373, at *1. Here, Mr. Malackowski had significant evidence from Dr. Johnson-Roberson on which to rely. And NVIDIA's citation to *Synopsys* is an attempt to establish a requirement not found in the law based on the specific facts of that case—an attempt that should be rejected. *See* Dkt. 265 at 20 (citing *Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 759, 774 (4th Cir. 2023).

Once again, NVIDIA raises issues that are properly the subject of cross-examination, not exclusion. The basis for Dr. Johnson-Roberson's opinions, and Mr. Malackowski's reliance on those opinions, both go to the weight to be accorded their testimony, not its admissibility, and thus NVIDIA's arguments should be rejected. *See Elosu*, 26 F.4th at 1026.

**B.    Mr. Malackowski Opined On The Relative Value Of The Asserted Trade Secrets Used In NVIDIA's Parking Software.**

Mr. Malackowski clearly states that his calculation of NVIDIA's unjust enrichment from the use of the Asserted Trade Secrets for specific customer contracts applies to the four trade secrets ▮ ▮▮▮▮ ▮ ▮▮▮ ▮ ▮▮▮ ▮ ▮▮▮ ▮ ▮▮▮ ▮ ▮▮▮ ▮ ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."

Dkt. 265, Ex. 10 at 7. He "separately apportioned the damages amount to each" of those four Asserted Trade Secrets, which he explained would "similarly apply to the per-unit royalty amount" if reasonable royalty damages were awarded. *Id.* at 8-9, n.10. Section 13 of his report is titled "Valuation of Individual Trade Secrets," and he provides over six pages of analysis, supported by citations, to reach his conclusion about the relative values of those four Asserted Trade Secrets. *Id.* at 121-27. There can be no dispute that Mr. Malackowski apportioned the unjust enrichment for specific customer contracts and reasonable royalty damages between those four Asserted Trade Secrets, and NVIDIA does not challenge Mr. Malackowski's methodology in the apportioning the value between those four trade secrets. Dkt. 265 at 21-22. Thus, NVIDIA offers no basis for excluding Mr. Malackowski's apportionment opinions under these two damages theories.

NVIDIA attempts to make an issue of Mr. Malackowski's opinions with regard to the Asserted Trade Secrets that are ████████████████████████████████████████, which only arise in the context of NVIDIA's unjust enrichment from its possession and use of the asserted trade secrets in development. Dkt. 265, Ex. 10 at 9 (§ 2.1.2). But "[i]n trade secret claims, [], damages need not be calculated with absolute precision." *ATS Prods.*, 2012 WL 253315, at *1. Mr. Malackowski has testified that the four Asserted Trade Secrets implemented in NVIDIA's parking software "create additional value as compared to ones who were not," and that the other three trade secrets Valeo is currently asserting (*see* Dkt. 265, Ex. 10) "have less of a commercial benefit." Dkt. 265, Ex. 3 at 122:2-16, 136:3-21. In the event Valeo presents a damages theory at trial based on NVIDIA's unjust enrichment from its possession and use of the asserted trade secrets in development, NVIDIA will have the opportunity to cross-examine Mr. Malackowski regarding his opinions about the relative value of the trade secrets being asserted, and the jury can reach its own conclusions about the weight to be accorded Mr. Malackowski's testimony. Courts have denied motions to exclude expert testimony for failing to apportion damages on a trade-secret-by-trade-secret basis where the damages calculation is not based on the value of the trade secrets themselves. *See, e.g.*, *SPS Techs.*, 2021 WL 4913509, at *3. This Court should do the same.

### III.    MR. MALACKOWSKI DOES NOT OFFER TECHNICAL OPINIONS.

NVIDIA's arguments regarding Appendix 10.2 and Section 9.2 of Mr. Malackowski's report, and his opinions related thereto, are quintessential examples of arguments that go to the weight to be accorded an expert's testimony, not its admissibility. NVIDIA's arguments should be rejected.

#### A.    Mr. Malackowski Properly Relied On Dr. Johnson-Roberson To Relate The Asserted Trade Secrets to ECFs.

NVIDIA alleges that Mr. Malackowski's opinions relating to Appendix 10.2, identifying Asserted Trade Secrets related to the ECFs, are based on "ipse dixit." Dkt. 265 at 23. Not so. Appendix 10.2 of Mr. Malackowski's report lists ███████████████████████████████████████████

████████████████ Ex. M at Appendix 10.2. As is clearly identified in Appendix 10.2, ████████████

████████████████████████████████████████████████████████████████████████████

come from "Discussion with Dr. Johnson-Roberson." *Id.*; Dkt. 265, Ex. 1 at 3590 (the same document as NVIDIA0107606 cited in Appendix 10.2). Mr. Malackowski also testified that the identification of

████████████████████████████████████████ "was through the work of Dr. Johnson-Roberson" and that the "specific analysis" shown in Appendix 10.2 "was in response to my query." Dkt. 265, Ex. 3 at 97:12-24. He consistently referred NVIDIA to Dr. Johnson-Roberson for details about the relation

████████████████████████████████████████. Ex. N at 96:4-103:10. And Mr. Malackowski explained that Appendix 10.2 "is cited for the reasonable royalty … to give credit to NVIDIA under factor 13." *Id.* at 96:11-22; *see also id.* at 97:18-98:8 ("this is simply for my qualitative assessment of Georgia-Pacific 13.").

There is nothing improper or inadmissible about Appendix 10.2 of Mr. Malackowski's report, or his opinions related to it. "Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014). Indeed, the Federal Rules of Evidence specifically state that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of." Fed. R. Evid. 703. And NVIDIA's cited case is not to the contrary. Dkt. 265 at 23 (citing *Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1005-07 (N.D. Cal. 2019) (striking expert declaration filed in support of summary judgment motion when it exceeded the scope of that same expert's report)).

NVIDIA criticizes Mr. Malackowski for not analyzing the basis for Dr. Johnson-Roberson's opinions (Dkt. 265 at 23-24), but that is entirely appropriate—the entire point of Mr. Malackowski relying on Dr. Johnson-Roberson is that Mr. Malackowski does not have the relevant expertise to perform his own analysis and ███████████████████████████████. And contrary to NVIDIA's argument, Mr. Malackowski did not testify that the information in Appendix 10.2 was based on his "common sense perspective.'" Dkt. 265 at 24 (quoting Dkt. 265, Ex. 3 at 100:22-101:19). Rather, Mr. Malackowski testified that Dr. Johnson-Roberson "provided ███████████ ███████████████████████ which, from a common sense perspective, all seem reasonable to me." Dkt. 265, Ex. 3 at 100:24-101:19. NVIDIA even uses ellipsis in a quote from Mr. Malackowski's deposition to make it seem he was offering his own opinion when, in fact, he was relaying his understanding of Dr. Johnson-Roberson's analysis. *Compare* Dkt. 265 at 24 (quoting Ex. 3 at 99-100) *with* Ex. N at 99:10-100:5 ("I think it's, frankly, a relatively obvious exercise to go through those customer-facing functions, for Dr. Johnson-Roberson to apply his knowledge of the NVIDIA system [and the] role of the trade secrets within that system, and to come to the conclusion that Hey, you have to use the trade secrets."). Because Mr. Malackowski did not rely on common sense to prepare Appendix 10.2, NVIDIA's cited cases are inapposite. *See* Dkt. 265 at 24 (citing cases).

Mr. Malackowski properly relied on Dr. Johnson-Roberson for his analysis in Appendix 10.2, not "common sense" or "ipse dixit," and thus NVIDIA's arguments all go to the weight to be accorded Mr. Malackowski's opinions related to Appendix 10.2, not their admissibility. NVIDIA's arguments should thus be rejected. *See Elosu*, 26 F.4th at 1026.

### B. Section 9.2 Of Mr. Malackowski's Report Should Not Be Excluded.

In making this argument, NVIDIA confuses the facts and data on which Mr. Malackowski relied in forming his opinions with the opinions themselves. In Section 9.2 of his report, Mr. Malackowski recites factual background regarding two NVIDIA employees who had previously worked at Valeo. Dkt. 265, Ex. 10 at 45-49. That recitation is supported with cites to the record, including the parties' interrogatory responses and fact witness testimony. *Id.* At no point in Section 9.2 does Mr. Malackowski state that he is offering an opinion, nor does he qualitatively assess the breadth of NVIDIA's misappropriation. *See id.* NVIDIA tries to spin Mr. Malackowski's deposition

testimony to assert he is offering an "opinion" about the breadth of the misappropriation. Dkt. 265 at 24-25. But Mr. Malackowski testified that he relied on the factual summary contained in Section 9.2 when performing his analysis. Dkt. 265, Ex. 3 at 59:14-60:5 (when Mr. Malackowski "conduct[ed] *analysis* related to avoided development costs," he referred back to Section 9.2, and did the same for "the delay *analysis*"). Mr. Malackowski considered Section 9.2 part of his opinions because they inform his analysis and ultimate conclusions, not because they are independent "opinions" about the breadth of the misappropriation, as NVIDIA alleges.

NVIDIA's cited case law does not support its argument. In *Stepien v. Raimondo*, the challenged expert "conceded that she had not seen any evidence to support her theory" and "was speculating" about why the agency acted as it did. 2024 WL 4043589, at *31 (W.D. Wash. Sept. 4, 2024), reconsideration denied, 2024 WL 5169969 (W.D. Wash. Dec. 19, 2024). In *Aya Healthcare Svs., Inc. v. AMN Healthcare, Inc.*, the challenged expert "impermissibly" interpreted contractual provisions and then "form[ed] conclusions as to their effects," when the jury "is capable of evaluating the same evidence and drawing conclusions" without the expert's testimony. 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020), *aff'd* 9 F.4th 1102 (9th Cir. 2021). Here, Mr. Malackowski properly relied upon the evidentiary record when performing his analysis about the damages owed Valeo if NVIDIA is found to have misappropriated Valeo's trade secrets—something outside the jury's capabilities. At trial, NVIDIA will have the opportunity to cross-examine Mr. Malackowski regarding the facts he relied upon, including those recited in Section 9.2. NVIDIA's arguments go to the weight to be accorded Mr. Malackowski's testimony, not its admissibility, and its attempt to exclude Section 9.2 of Mr. Malackowski's report should be denied. *See Elosu* 26 F.4th at 1026.

## CONCLUSION

NVIDIA's Motion to Exclude the Testimony of James Malackowski (Dkt. 265) should be denied for the reasons stated above.

1    DATED:  May 22, 2025                    Respectfully submitted,

2                                            KIRKLAND & ELLIS LLP

3
                                             */s/ Russell E. Levine, P.C.*
4                                            Brandon H. Brown, P.C. (SBN 266347)
                                             bhbrown@kirkland.com
5                                            Julien Crockett (SBN 335532)
                                             julien.crockett@kirkland.com
6                                            KIRKLAND & ELLIS LLP
                                             555 California Street
7                                            San Francisco, CA 94104
                                             Telephone: (415) 439-1400
8                                            Facsimile: (415) 439-1500

9                                            Russell E. Levine, P.C. (pro hac vice)
                                             russell.levine@kirkland.com
10                                           John Lausch, P.C. (pro hac vice)
                                             john.lausch@kirkland.com
11                                           Molly Kelley (pro hac vice)
                                             molly.kelley@kirkland.com
12                                           Michael Gremillion (pro hac vice)
                                             jacob.gremillion@kirkland.com
13                                           KIRKLAND & ELLIS LLP
                                             333 West Wolf Point Plaza
14                                           Chicago, IL 60654
                                             Telephone: (312) 862-2000
15                                           Facsimile: (312) 862-2200

16                                           Steven Dirks (pro hac vice)
                                             KIRKLAND & ELLIS LLP
17                                           1301 Pennsylvania Ave. NW
                                             Washington, D.C., 20004
18                                           Telephone: (202) 879-5000
                                             Facsimile: (202) 389-5200
19
                                             Laura Uhlenhuth (SBN 330678)
20                                           laura.uhlenhuth@kirkland.com
                                             KIRKLAND & ELLIS LLP
21                                           95 South State Street
                                             Salt Lake City, UT 84111
22                                           Telephone: (801) 877-8090
                                             Facsimile (801) 877-8101
23
                                             *Attorneys for Plaintiff Valeo Schalter und*
24                                           *Sensoren GmbH*

25

26

27

28
                                             24

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the public, redacted version of the foregoing document and its supporting documents and exhibits was served on counsel of record via the CM/ECF system of the United States District Court for the Northern District of California, and a true and correct copy of the sealed, unredacted version of the foregoing document and its supporting documents and exhibits was served via email on all counsel of record.

DATED: May 22, 2025

/s/ Russell E. Levine, P.C.
Russell E. Levine, P.C.