QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Sean S. Pak (Bar No. 219032)
  seanpak@quinnemanuel.com
  Andrew M. Holmes (Bar No. 260475)
  drewholmes@quinnemanuel.com
  Jodie W. Cheng (Bar No. 292330)
  jodiecheng@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Ron Hagiz (admitted *pro hac vice*)
  ronhagiz@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY  10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant NVIDIA Corporation*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Valeo Schalter und Sensoren GmbH,<br><br>Plaintiff,<br><br>v.<br><br>NVIDIA Corporation,<br><br>Defendant. | Case No. 5:23-cv-5721-NW-VKD<br><br>**DEFENDANT NVIDIA CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF JAMES MALACKOWSKI**<br><br>**FILED UNDER SEAL**<br><br>Judge:         The Hon. Noël Wise<br>Courtroom:   8, 4th Floor<br>Hearing Date: September 17, 2025<br>Hearing Time: 9:00 am |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. VALEO CANNOT AVOID SCRUTINY UNDER DAUBERT BY THE ROTE ASSERTION THAT THE FLAWS IN MR. MALACKOWSKI'S TESTIMONY ALL GO TO WEIGHT, NOT ADMISSIBILITY ................................................................ 1

III. MR. MALACKOWSKI'S SPECULATIVE OPINIONS ABOUT POTENTIAL PROFITS FAR INTO THE FUTURE PROVIDE NO BASIS FOR AN UNJUST ENRICHMENT AWARD .............................................................................................. 3

IV. MR. MALACKOWSKI'S "APPORTIONMENT" ANALYSIS IS FUNDAMENTALLY UNRELIABLE .................................................................................................................. 8

    A. Mr. Malackowski Improperly "Apportioned" the Entire Value of NVIDIA's Parking Solution To Only the Narrow Features of the Claimed Trade Secrets .......... 8

    B. Mr. Malackowski Did Not Even Attempt To Apportion the Value Each Asserted Trade Secret ................................................................................................ 11

V. VALEO FAILS TO PROVE THAT MR. MALACKOWSKI'S UNSUPPORTED AND UNQUALIFIED OPINIONS ARE ADMISSIBLE. .................................................. 13

    A. Valeo Fails To Address the Shortcomings in Dr. Johnson-Roberson's Opinions ............................................................................................................... 13

    B. Mr. Malackowski's "Opinions" on Liability Do Not Help the Jury ......................... 14

VI. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

### Cases

*02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
　399 F. Supp. 2d 1064 (N.D. Cal. 2005) .................................................................................. 11

*3D Sys., Inc. v. Wynne*,
　2025 WL 886958 (S.D. Cal. Mar. 20, 2025) .......................................................................... 10

*ATS Prods. Inc. v. Ghiorso*,
　2012 WL 253315 (N.D. Cal. Jan. 26, 2012) ............................................................................. 2

*Bally v. State Farm Life Ins. Co.*,
　2022 WL 594798 (N.D. Cal. Feb. 24, 2022) ............................................................................ 2

*BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*,
　2025 WL 358986 (D. Ariz. Jan. 31, 2025) ............................................................................... 2

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
　20 F.4th 1231 (9th Cir. 2021) (Rawlinson, C.J., concurring) ................................................... 9

*Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*,
　53 F. 4th 368 (6th Cir. 2022) .................................................................................................... 2

*Centripetal Networks, LLC v. Palo Alto Networks, Inc.*,
　2024 WL 380972 (E.D. Va. Jan. 30, 2024) .............................................................................. 2

*EchoSpan, Inc. v. Medallia, Inc.*,
　2023 WL 9502960 (N.D. Cal. Oct. 10, 2023) ........................................................................ 12

*EchoSpan, Inc. v. Medallia, Inc.*,
　2024 WL 3431337 (N.D. Cal. July 2, 2024) .......................................................................... 12

*EcoFactor, Inc. v. Google LLC*,
　2025 WL 1453149 (Fed. Cir. May 21, 2025) ........................................................................... 1

*Elsayed Mukhtar v. California State Univ., Hayward*,
　299 F.3d 1053 (9th Cir. 2002) .................................................................................................. 2

*Ford Motor Co. v. Versata Software, Inc.*,
　2018 WL 10733561 (E.D. Mich. July 9, 2018) ................................................................. 9, 14

*Inguran, LLC v. ABS Global, Inc.*,
　2019 WL 3984373 (Aug. 23, 2019 W.D. Wis.) ............................................................ 3, 11, 14

*Johns v. Bayer Corp.*,
　2013 WL 1498965 (S.D. Cal. Apr. 10, 2013) ........................................................................ 15

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) .................................................................................................. 11

*LivePerson, Inc. v. [24]7.AI, Inc.*,
    2018 WL 6257460 (N.D. Cal. Nov. 30, 2018) ........................................................................ 13

*Lust v. Merrell Dow Pharm., Inc.*,
    89 F.3d 594 (9th Cir. 1996) .................................................................................................... 11

*Master Replicas, Inc. v. Levitation Arts, Inc.*,
    2009 WL 10670674 (C.D. Cal. May 13, 2009) ........................................................................ 5

*Metadata Solns., Inc. v. Veeva Sys., Inc.*,
    2021 WL 4243309 (S.D.N.Y. Aug. 25, 2021) .......................................................................... 4

*Morley v. Square, Inc.*,
    2016 WL 1728367 (E.D. Mo. Apr. 29, 2016) ........................................................................... 3

*Morton v. Cnty. of San Diego*,
    2024 WL 5126281 (S.D. Cal. Dec. 16, 2024) ......................................................................... 15

*In re Pandora Media, LLC*,
    2025 WL 1090408 (C.D. Cal. Jan. 21, 2025) ........................................................................... 2

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    904 F.3d 965 (Fed. Cir. 2018) ................................................................................................ 10

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) .................................................................................................... 3

*Siquieros v. General Motors LLC*,
    2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ................................................................................. 2

*Stepien v. Raimondo*,
    2024 WL 4043589 (W.D. Wash. Sept. 4, 2024) ..................................................................... 15

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    2018 WL 2172502 (E.D. Va. May 10, 2018) ....................................................................... 2, 5

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
    70 F.4th 759 (4th Cir. 2023) .............................................................................................. 11, 14

*Tavantzis v. American Airlines, Inc.*,
    2025 WL 1331620 (N.D. Cal. May 7, 2025) ........................................................................... 2

*USI Ins. Servs. Nat'l, Inc. v. Ogden*,
    371 F. Supp. 3d 886 (W.D. Wash. 2019) ................................................................................. 3

**Other Authorities**

Rules 104(a) ................................................................................................................. 1

Rule 702 ............................................................................................................... 1, 2, 11

## I.    INTRODUCTION

Valeo must demonstrate "that it is more likely than not that" that Mr. Malackowski's testimony meets the criteria of Rule 702.  Here, Valeo fails to meet that standard in at least three ways, each of which provides grounds for exclusion.  First, his future-profits theory seeks massive damages based on projections to 2042 for an automobile-software subscription model that NVIDIA and Mercedes have never tried before and that has yet to generate any revenues at all.  *Daubert* precludes such unreliable speculation.  Second, contrary to governing law, Mr. Malackowski allocates the entirety of NVIDIA's projected parking revenues to only the Asserted Trade Secrets even though it is undisputed that NVIDIA's parking software includes many other valuable features.  Indeed, the main driver of value for NVIDIA's autonomous vehicle software is its cutting-edge AI-based functionality, which indisputably has nothing to do with Valeo's asserted trade secrets.  Third, despite purporting to opine on damages for the specific Asserted Trade Secrets, Mr. Malackowski does not even attempt to analyze their individual value on a trade-secret-by-trade-secret basis, as required by the law.  Instead, he offers only the conclusory and internally inconsistent assertion that the four asserted trade secrets he considered all have equal value and each, by itself, contributes the entire value of NVIDIA's parking solution.  And as to the remaining Asserted Trade Secrets, he offers only the generic statement that they provide "create additional value," a statement so generic that it could not possibly aid the jury.  Finally, Mr. Malackowski has based his damages opinions on deficient, unreliable, and unqualified conclusory assertions regarding technical issues and liability. NVIDIA's motion, Dkt. 269 (the "Motion" or "Mot.") should be granted.

## II.    VALEO CANNOT AVOID SCRUTINY UNDER DAUBERT BY THE ROTE ASSERTION THAT THE FLAWS IN MR. MALACKOWSKI'S TESTIMONY ALL GO TO WEIGHT, NOT ADMISSIBILITY

Valeo litters its opposition, Dkt. 278 (the "Opposition" or "Opp.") with the tired mantra that the "real dispute" is merely "how much weight the jury should accord [Mr. Malackowski's] opinions."  Opp. at 2; *id.* at 1, 10, 14, 17-23.  This attempt to sidestep the threshold requirements for admissibility has been repeatedly rejected by courts and even prompted amendments to Rule 702.  In 2023, Rule 702 was amended to reaffirm the court's "essential" duty as a gatekeeper in determining whether the proponent of expert testimony has proven, by a preponderance of evidence, that the

testimony has sufficient factual basis and to ensure "experts' opinions stay within the bounds of a reliable application of the expert's basis and methodology." *EcoFactor, Inc. v. Google LLC*, 2025 WL 1453149, at *3 (Fed. Cir. May 21, 2025) (cleaned up).  The Advisory Committee reminds courts that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology" are **not** "questions of weight and not admissibility" and to rule otherwise would be "an incorrect application of Rules 702 and 104(a)."  Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("2023 Advisory Note"); *In re Pandora Media, LLC*, 2025 WL 1090408, at *3 (C.D. Cal. Jan. 21, 2025) ("Rule 702 directs courts to apply more scrutiny to the sufficiency of an expert's analysis and the application of the expert's methodology").  Only "once the court has found it more likely than not that the admissibility requirement has been met," do "any attack[s] … go … to the weight of the evidence."  2023 Advisory Note; *BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, 2025 WL 358986, at *5 (D. Ariz. Jan. 31, 2025) (excluding expert opinions because he failed to consider key facts of the case and it was thus not "more likely than not" he had "a sufficient basis to support [his disgorgement of lost profits] opinion.") (quoting 2023 Advisory Note).

    None of Valeo's cited cases hold otherwise.  Some do not address admissibility under Rule 702 at all[1] and the others simply apply the correct legal standard to facts much different than those here.[2]  For example, in *Siquieros*, a dispute over the adequacy underlying data went to impeachment, instead of admissibility, where the moving party "did not identify anything in particular that was deficient in the specific data."  *Siquieros v. General Motors LLC*, 2022 WL 74182, at *12 (N.D. Cal. Jan. 7, 2022).  Finally, Valeo's misplaced focus on Mr. Malackowski's credentials (Opp. at 5) only underscores the dangers of admitting his unreliable testimony.  *Elsayed Mukhtar v. California State*

---

[1] Opp. at 6-7 (citing *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F. 4th 368, 393 (6th Cir. 2022) (Rule 50 judgement applying Kentucky law); *ATS Prods. Inc. v. Ghiorso*, 2012 WL 253315, at *1 (N.D. Cal. Jan. 26, 2012) (Rule 50 judgment; lost profits theory); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 2018 WL 2172502, at *7 (E.D. Va. May 10, 2018) (same)).

[2] Opp. at 2 (citing *Bally v. State Farm Life Ins. Co.*, 2022 WL 594798, at *2 (N.D. Cal. Feb. 24, 2022) ("cross-examination" and "presentation of contrary evidence" appropriate means for challenging challenges that did "**not** go to admissibility"); *Tavantzis v. American Airlines, Inc.*, 2025 WL 1331620, *6 (N.D. Cal. May 7, 2025) (analyzing the reliability of the expert's methods, data, and the scope of opinions, and only then determining that two "remaining arguments," based on the expert's reliance on a flight operation manual and testimony discrepancies, went to weight)).

*Univ., Hayward*, 299 F.3d 1053, 1063–64 (9th Cir. 2002) (internal citation omitted) (trial court's obligation to determine the reliability of expert testimony is "particularly important considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony"). And, despite Mr. Malackowski's credentials, courts have repeatedly excluded his testimony under *Daubert*. *E.g.*, *Centripetal Networks, LLC v. Palo Alto Networks, Inc.*, 2024 WL 380972, at *7 (E.D. Va. Jan. 30, 2024); *Inguran, LLC v. ABS Global, Inc.*, 2019 WL 3984373, at *1 (Aug. 23, 2019 W.D. Wis.); *Morley v. Square, Inc.*, 2016 WL 1728367, at *2 (E.D. Mo. Apr. 29, 2016).

There is no merit to Valeo's contention that excluding its expert's testimony would be tantamount to NVIDIA "avoiding any consequences of its actions" (Opp. at 1, 6), nor is it any reason to allow otherwise inadmissible and unreliable expert testimony. If the jury finds liability, then they will determine the appropriate measure of damages—and can do so without Mr. Malackowski's unreliable or unqualified expert testimony. *USI Ins. Servs. Nat'l, Inc. v. Ogden*, 371 F. Supp. 3d 886, 899 (W.D. Wash. 2019) ("[W]hile expert testimony may play a role in providing a reasonable method for calculating damages, it is not the only way to prove either the fact or the amount of damage."). There is no absolute right to present expert testimony; the rules of evidence allow such testimony only when certain criteria are met. And, simply, Mr. Malackowski's testimony does not met that criteria. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) , as amended (Apr. 27, 2010) ("In sum, the trial court must assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand.") (citing *Daubert*) (cleaned up).

### III. MR. MALACKOWSKI'S SPECULATIVE OPINIONS ABOUT POTENTIAL PROFITS FAR INTO THE FUTURE PROVIDE NO BASIS FOR AN UNJUST ENRICHMENT AWARD

Nothing in Valeo's Opposition meets its burden of establishing the reliability of Mr. Malackowski's unjust-enrichment opinion, which seeks hundreds of millions of dollars based on projections ███████████████████████████ ███████████████████████████████████████

***First***, Valeo seeks to excuse Mr. Malackowski's speculative methodology by citing cases noting that damages calculations need not be proved with "unerring" or "absolute precision." Opp. at 6–7. But those same cases also state that "damages may not be based on speculation" and must

1  rest on a "reasonable basis." *E.g.*, *Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics,*
2  *Inc.*, 976 F.2d 1559, 1579 (Fed. Cir. 1992). Here, the problems with Mr. Malackowski's future-
3  damages analysis are not small quibbles about the exact number he reaches, but instead go to the
4  heart of his massive demand and are based on speculative far-future profits from an entirely new
5  venture.

6  **Second**, Valeo tries to distinguish the *Medidata* court's holding that "hypothetical future
7  profits" are not allowed because "unjust enrichment requires a benefit already conferred," arguing
8  that "***projected*** parking revenue[] has already been conferred on NVIDIA." Opp. at 8 (emphasis
9  added and omitted) (citing *Metadata Solns., Inc. v. Veeva Sys., Inc.*, 2021 WL 4243309, at *4
10 (S.D.N.Y. Aug. 25, 2021)). But "projected" revenues are exactly the type of "hypothetical future
11 profits" that *Medidata* excluded.

12 Moreover, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
13 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
14 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
15 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *E.g.*, Opp. at 3. But ▬▬▬▬▬▬▬▬▬
16 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
17 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬—as Mr. Malackowski admitted. Dkt. 269-4 at 205–
18 206; Mot. at 11-13. Valeo also cites ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
19 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
20 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" (Dkt. 269-2 at -3365); and, "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
21 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
22 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
23 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
24 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
25 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.*[3] Neither of ▬▬▬▬▬▬▬▬▬▬▬
26 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

28 [3] Emphases added unless otherwise stated.

████████████████████████████████████████. *Id*. And, as Mr. Malackowski recognizes, ████████████████████████████████████████████████████████████, further undermining the claim that any future amounts are reasonably certain. Dkt. 269-11 at 76.

**Third**, in contravention of the very caselaw that Valeo cites, Mr. Malackowski bases his opinions on future projections of sales and profits that he understands do involve "untested products, an unknown market, [and] an unproven enterprise." Opp. at 7 (quoting *Steves and Sons*, 2018 WL 2172502, at *7). The "products" are ██████████████████████████████████████ ████. Dkt. 269-2 at -3590. NVIDIA's NDAS software features are "untested" by the market as NVIDIA had never developed or offered NDAS features before, and Mercedes has never attempted to sell them.[4] *E.g.*, Dkt. 269-11 § 9.3; Dkt. 269-3 at 86:19-20. How the "market" will receive NVIDIA's NDAS features is fundamentally "unknown." *E.g.*, 269-11 at 73; Dkt. 269-12 at 69–70. The "enterprise" here is NVIDIA and Mercedes' joint venture to offer NDAS software subscriptions in equipped Mercedes vehicles. Opp. at 3. NVIDIA and Mercedes' collaboration is "unproven" as there is no dispute that ████████████████████████████████████████ ██████████████. Dkt. 269-3 at 108–111, 271–272.

**Fourth**, Valeo asserts that "this is not a new venture for MB," but the facts contradict this assertion. Opp. at 11. Valeo notes that Mercedes "has been selling automobiles for over 100 years." *Id*. But Mercedes being an established car manufacturer has no bearing on predicting sales of ████████████████████████████████████████████████████. *Master Replicas, Inc. v. Levitation Arts, Inc.*, 2009 WL 10670674, at *5 (C.D. Cal. May 13, 2009) ("[A] thorough reading of the case law reveals that lost anticipated profits for a new venture, and not just a new business, are also precluded when their occurrence is uncertain, contingent, and speculative.") (collecting cases holding same) (cleaned up). Mr. Malackowski conceded that Mercedes had never sold or offered for sale that kind of product before. Dkt. 269-4 at 207:7-19. Moreover, market conditions make even projections about the number of automobile sales difficult to predict. Mercedes

---

[4] "████████████████████████████████████████████████████████ ██████████—not that the product has ever been evaluated under real market conditions (e.g., sales performance, pricing, demand, and customer acceptance). Dkt. 269-3 at 80:19-25; 324:13-24.

1  itself has acknowledged market conditions prevent it from making projections "with a reliable degree
2  of certainty" even for a short-term outlook.  *E.g.*, https://www.reuters.com/business/autos-
3  transportation/mercedes-reports-less-profitable-cars-segment-q1-tariffs-bite-2025-04-30/, Apr. 30,
4  2025 ("Chief Financial Officer Harald Wilhelm told analysts that … full-year guidance 'cannot be
5  provided today with a reliable degree of certainty.'"); https://group.mercedes-
6  benz.com/investors/share/outlook/, Apr. 30, 2025 ("The current volatility … is too high to reliably
7  assess the business development for the remainder of the year.  Therefore, reporting figures cannot
8  be estimated with the necessary level of certainty.").

9  Valeo also misleadingly asserts that Mercedes has been "selling … software defined features
10 for decades." Opp. at 11.  But Valeo's cited support explains that "software-defined features" include
11 functionalities like anti-lock brakes and climate control systems.  Dkt 269-11 at 76 (citing "*What is
12 a Software-Defined Vehicle?*," Blackberry QNX, https://blackberry.qnx.com/en/ultimateguides/).
13 Finally, Valeo notes that some Mercedes cars have included limited automated "ADAS parking
14 functionality." Opp. at 11.  But the facts show that Mercedes has never sold ADAS software ▆▆
15 ▆▆▆▆▆▆▆▆, as Mr. Malackowski admitted.  Dkt. 269-4 at 207:7-19.

16 ***Fifth***, Valeo argues that Mr. Malackowski's far-flung projections must be reliable enough to
17 pass muster under *Daubert* ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.  Opp. at 11 (▆▆▆▆▆▆▆▆
18 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆); *id.* at 12 (Mr. Malackowski
19 relies on "▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
20 ▆▆▆.").  But, as an initial matter, Valeo has simply assumed that ▆▆▆▆▆▆▆▆ are
21 sufficiently reliable to form the basis of a damages award, without a reliable foundation for that
22 assumption.  Ex. 18 (demonstrating that Mr. Malackowski did not evaluate ▆▆▆▆▆▆▆▆
23 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆); *supra* p. 8 (discussing Mercedes' inability to
24 provide reliable projections for this year and market uncertainty); *infra* p. 9 (discussing
25 Malackowski's lack of understanding of the ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆).
26 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
27 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
28 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

1   ▌▌▌▌▌. Mot. at 12–13. And while Valeo mistakenly argues that it's "just
2   attorney argument and speculation that [NDAS] may be unsuccessful," (Opp. at 12), the unconverted
3   factual record demonstrates that ▌▌▌▌▌
4   ▌▌▌▌▌. Dkt. 269-3 at 86:20-25
5   (e.g., "▌▌▌▌▌
6   ▌▌▌▌▌
7   ▌▌▌▌▌."); Opp. at 4; Mot. at 11. The speculative nature of this new
8   venture is intensified by Mr. Malackowski's projection of market conditions ▌▌▌▌▌
9   ▌▌▌▌▌ Dkt. 269-3 at 272:2-6 ▌▌▌▌▌
10  ▌▌▌▌▌
11  ▌▌▌▌▌ It is simply not reasonably reliable for Mr. Malackowski
12  to base his opinions on projections for the next ▌▌▌ years.
13      Moreover, because Mr. Malackowski elected to rely on lump-sum projections of revenue, he
14  does not know which inputs were used for each of these variables or what subsequent adjustments
15  NVIDIA may have made. Dkt. 269-4 at 168:5-170:18; Dkt. 269-11 at 67, Fig. 21; *id*. at 66 ("▌
16  ▌▌▌▌▌
17  ▌▌▌▌▌."); *see also* Dkt. 278-9 at 25:17-26:25 (NVIDIA's corporate designee testifying ▌
18  ▌▌▌▌▌."). The record
19  shows that ▌▌▌▌▌
20  ▌▌▌▌▌
21  ▌▌▌▌▌. *E.g.*, Ex. 15; Dkt. 269-3
22  at 268:10-269:6 (NVIDIA corporate representative ▌▌▌▌▌

---

[5] Among the myriad scenarios that could occur, neither Valeo nor Mr. Malackowski have a reasoned explanation why he based his calculations solely on one scenario among the many others. NVIDIA produced and cited its most complete projections for the Mercedes Agreement in its interrogatory responses (*cf.* Opp. at 14), yet Mr. Malackowski instead chose to rely solely on uncited projections that lacked the substantial detail, ▌▌▌▌▌ found in the cited projections. *Compare* Dkt. 269-11 at 67, Fig. 21 (excerpting just ▌▌▌▌▌ ▌▌▌▌▌ cited in its interrogatory response).

1 ▮); 271:20-272:11 (explaining that ▮
2 ▮."). Notably, Valeo appears
3 to concede that it has no factual basis regarding the reliability of NVIDIA's software sales
4 projections, simply asserting that the accuracy of "NVIDIA's projections of software sales is not
5 relevant" (Opp. at 11), despite its damages expert reliance on those very projections.

6     *In sum*, it is telling that Valeo fails to cite even one case sanctioning what it asks the Court
7 to do here—i.e., allow a damages theory based entirely on projected financial performance spanning
8 more than a decade and a half into the future of a ▮
9 ▮ for sales or profits. Mr. Malackowski's speculative future-profits
10 opinion should be excluded.

11 **IV. MR. MALACKOWSKI'S "APPORTIONMENT" ANALYSIS IS FUNDAMENTALLY UNRELIABLE**

12
13     **A.   Mr. Malackowski Improperly "Apportioned" the Entire Value of NVIDIA's Parking Solution To Only the Narrow Features of the Claimed Trade Secrets**

14     Valeo's Opposition mistakenly argues that "▮
15 ▮" based on assertions that those features are "▮
16 ▮.
17 Opp. at 15–16. But just as one cannot attribute the entire value of a car to the right-front tire simply
18 because the car would not work properly without it, one cannot attribute the entire value of NVIDIA's
19 parking solution to only the narrow functionality addressed by the Asserted Trade Secrets.

20     There can be no dispute that NVIDIA's parking features have massive value that cannot be
21 attributed to the Asserted Trade Secrets. Dkt. 269-4 at 110:16-23. Valeo does not dispute that: (1)
22 ▮
23 ▮ (Mot. at 5); (2) ▮
24 ▮ (*id*.); (3) ▮
25 ▮
26 ▮ (*id*. at 18–19); and (4)
27 ▮ (*id*.).
28



Given those facts, the law forbids allocating all of NVIDIA's parking profits to only the Asserted Trade Secrets. Mot. at 17–20 (collected cases). As the Ninth Circuit instructs, it is improper for an expert to attribute the "entire value" of a sale to a trade secret when the "division had business and value that did not involve use of the misappropriated trade secret." *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231, 1246 (9th Cir. 2021) (Rawlinson, C.J., concurring). Valeo fails to show why *BladeRoom*, or NVIDIA's other cited authority requiring apportionment to the asserted trade secrets, would not apply here. Opp. at 17. In fact, they do. *See Ford Motor Co. v. Versata Software, Inc.*, 2018 WL 10733561, at *11 (E.D. Mich. July 9, 2018) (excluding expert testimony for failure to apportion: "Versata counters that Elson was not required to apportion damages because the trade secrets are 'not merely one piece of a larger system of products' but are, instead, 'the product' at issue. The Court disagrees. The 'product at issue' here includes trade secrets and non-trade secrets."). Here, like "[i]n *Hilderman*, there [i]s 'no basis' to conclude that the full value of the company's [asset] [i]s attributable to the trade secrets." Opp. at 17.

Instead, Valeo's Opposition argues that Mr. Malackowski's apportionment is appropriate because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Opp. at 15–16. But ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Dkt. 280-3 at § VII. Thus, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, is not germane to the value of the particular Asserted Trade Secrets at issue here. Yet Mr. Malackowski opines that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—is the basis for his apportionment. Dkt. 265-11 § 11.2.3. Nor has Valeo established that Mr. Malackowski's damages theories are directed to the incremental value ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; and, even worse, he did not even consider that question.

Drawing from patent cases, Valeo also invokes the "entire market value rule." But that rule has developed to prohibit the type of damages claims made here. In a patent case, the entire market value rule "permits recovery of damages based on the value of a [technology owner's] entire apparatus containing several features **when the [allegedly misappropriated technology] is the basis for customer demand**." Opp. at 16 (quoting *3D Sys., Inc. v. Wynne*, 2025 WL 886958, at *13

1  (S.D. Cal. Mar. 20, 2025)). But Valeo cannot cite to anything in the record, let alone in Mr. Malackowski's analysis or opinion, that shows ███████████████████████████ is **the** basis for customer demand. The facts are quite the opposite. NVIDIA offers a parking solution, ████████████████████████████████████████████████████████████████████████████. Dkt. 269-11 at 92. The record is clear that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Dkt. 269-3 at 226:3-13; Dkt. 269-2 at -3350 (citing ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.").

In fact, Mr. Malackowski's generic (and unfounded) assertion that the accused functionality is "crucial" or integrated into an overall system is the precise kind of testimony prohibited by the entire market value rule. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) ("LaserDynamics' use of the entire market value rule was impermissible... It is not enough to merely show that the disc discrimination method is viewed as valuable, important, or even essential to the use of the laptop computer."); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018) (remanding for retrial on insufficient bases for damages under entire market value rule: "[T]he entire market value rule is appropriate only when the patented feature is the sole driver of customer demand or substantially creates the value of the component parts…Where the accused infringer presents evidence that its accused product has other valuable features beyond the patented feature, the patent holder must establish that these features do not cause consumers to purchase the product.") (collecting cases) (cleaned up); *id.* ("But when the product contains multiple valuable features, **it is not enough to merely show that the patented feature is viewed as essential**, that a product would not be commercially viable without the patented feature, or that consumers would not purchase the product without the patented feature.").

Finally, Valeo also notes that NVIDIA bears the burden of proving "deductible expenses" from its gross revenues. Opp. at 14. But NVIDIA's burden of proof on the substantive issue does not give Valeo a free pass to introduce unreliable expert testimony—Valeo bears the burden of

proving the admissibility of Mr. Malackowski's opinions. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); Fed. R. Evid. 702.

### B. Mr. Malackowski Did Not Even Attempt To Apportion to the Value Each Asserted Trade Secret

Valeo also has the burden to "provide the necessary reasonable basis for the jury to apportion unjust enrichment" damages on a trade secret-by-trade secret basis, where an "assessment of importance, not dollar value" is legally insufficient. *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1077 (N.D. Cal. 2005). Ignoring *02 Micro*, Valeo's Opposition instead argues that Mr. Malackowski's conclusory assertion that ██████████████████████████████████████████████████████████████████, satisfies its burden to apportion damages to each Asserted Trade Secret. Opp. at 19-20. Valeo is wrong. Mr. Malackowski failed to do any of the work that would be necessary to assess the value of any of these four, or the remaining other three, Asserted Trade Secrets. He did not analyze the commercial or economic value of the purported benefits of each Asserted Trade Secret over information available in the public domain; he did not compare the Asserted Trade Secrets to the value of other features or functionalities; and he did not even attempt to quantify the damages attributable to each Asserted Trade Secret. *See id.*; Dkt. 269-4 at 135:1-137:6. Simply, Mr. Malackowski's conclusory opinions fails to provide any reliable basis for assessing the economic value of each Asserted Trade Secret. *Synopsys,* 70 F.4th at 774 (affirming exclusion of expert opinions as to trade secret value based on "conclusory assertions" that "failed to connect the dots between the collective corporate value and the seventy-five alleged trade secrets."); *Inguran*, 2019 WL 3984373, at *1 (excluding Mr. Malackowski's opinion because he "could only be guessing as to how [the technical value] might translate as to the relative market value").

Valeo's incorrect position is remarkably similar to the reasoning rejected in *EchoSpan, Inc. v. Medallia, Inc.*, 2024 WL 3431337 (N.D. Cal. July 2, 2024); *compare EchoSpan, Inc. v. Medallia, Inc.*, 2023 WL 9502960, at 1 (N.D. Cal. Oct. 10, 2023) (declining to exclude expert for failure to apportion) (cited in Opp. at 2, 5) *with id.* (ultimately granting judgment as a matter of law because the trade secrets were "not apportion[ed]"). There, the plaintiffs alleged misappropriation of nine trade secrets, but the jury only found misappropriation of one. The plaintiffs' damages expert

1  claimed that all nine of the asserted trade secrets were a "group of intangible assets" that allowed the
2  software to function as a "bundle"; and, thus, regardless whether one or all nine were
3  misappropriated, the damages would be the same. *Id*. at *3. Granting JMOL for failure to apportion
4  for each individual trade secret, the court found that an "all-or-none" unjust enrichment theory based
5  on inextricably "bundled" value put the jury in an untenable position because the expert provided no
6  way for the jury to determine damages for misappropriation of just one of the nine asserted trade
7  secrets. *Id*. at *10. The *EchoSpan* court rejected the plaintiff's attempt to rely on "relative value" to
8  rescue its damages case, reasoning that knowing that one trade secret is "relatively more valuable
9  wouldn't give us a reasoned basis for arriving at a price," and "[a]ny price would still be speculative
10  guesswork." *Id*.

11        Mr. Malackowski's opinion is similarly legally insufficient and warrants exclusion. Here,
12  Mr. Malackowski claims in a conclusory manner that the ███████████████████████
13  ████████████████████████████████████████████████████████████████████████████████
14  ██████████████████████████████████████." Dkt. Ex. 16 at 115:12-18. His
15  ████████████████████████████████████ does nothing to help the jury determine
16  a damages award if, for example, liability is found for Asserted Trade Secrets Nos. 3 and 11 but not
17  Nos. 8 and 9. Mr. Malackowski thus fails to "provide a reasonable basis for quantifying th[e]
18  importance" of these Asserted Trade Secrets. *EchoSpan*, 2024 WL 3431337 at *10.

19        Compounding the deficiencies in his opinions, ███████████████████████
20  ████████████████████████████████████████████████████████████████████████████████
21  ████████. *See* Mot. at 21. Valeo instead contends that the Asserted Trade Secrets Mr. Malackowski
22  apportioned relative to each other "create additional value as compared to ones who were not," and
23  that these other three Asserted Trade Secrets "have less of a commercial benefit." Opp. at 20. This
24  vague attempt at ranking relative importance falls far short of the standards set in *02 Micro* and
25  *EchoSpan* and, if anything, leaves the jury with more questions than answers. Mr. Malackowski
26  "offers no methodology for the jury to calculate trade secret misappropriation damages on fewer than

all of the [] alleged trade secrets in the case," and therefore his opinion must be excluded. *LivePerson, Inc. v. [24]7.AI, Inc.*, 2018 WL 6257460, at *2 (N.D. Cal. Nov. 30, 2018).[6]

V.   **VALEO FAILS TO PROVE THAT MR. MALACKOWSKI'S UNSUPPORTED AND UNQUALIFIED OPINIONS ARE ADMISSIBLE.**

   A.   **Valeo Fails To Address the Shortcomings in Dr. Johnson-Roberson's Opinions**

Valeo's arguments cannot cure Dr. Johnson-Roberson's conclusory technical opinions, on which Mr. Malackowski relies. Opp. at 18–19. **First**, Valeo claims both that NVIDIA cited to the wrong portion of Dr. Johnson Roberson's report and that the report contained more than NVIDIA cited. *Id*. at 18. But Valeo does not identify anywhere in ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *Id*. Whether or not NVIDIA independently developed the technology has no relevance to the technical or economic value of Valeo's Asserted Trade Secrets. **Second**, Valeo complains that NVIDIA failed to "accurately reflect the extent of [Mr. Malackowski's] testimony regarding his discussions with Dr. Johnson-Roberson," but does not expand on or explain the "extent" of those discussions. Valeo only argues that Mr. Malackowski's opinions were "based on **a** conversation [he] had with Dr. Johnson-Roberson and that Dr. Johnson-Roberson's opinions are 'described within his report.'" *Id*. at 18–19  Valeo has nothing to add.

**Third**, Valeo fails to meaningfully distinguish any of NVIDIA's cited authority. *Inguran* remains directly on point. *See* Mot. at 20 (citing *Inguran*, 2019 WL 3984373 at *1). There, as here, Mr. Malackowski relied on a technical expert's "vague allocation from a technical standpoint" and could only "guess[] as to how that might translate as to the relative **market** value" of the Asserted Trade Secrets. *Id*.  Valeo's bald assertion, that **this time** "Malackowski had significant evidence from Dr. Johnson-Roberson on which to rely," is belied by the absence of any citation to the record. Opp. at 19. Valeo's bald assertion that Dr. Johnson-Roberson "offered a robust analysis … in support

---

[6]   Regarding Mr. Malackowski's "alternative" damages calculation based on NVIDIA's avoided development costs, Valeo concedes that Mr. Malackowski did not offer any apportionment opinion on a trade secret-by-trade secret basis.

1  of his opinion that value of NVIDIA's parking revenues are attributable to the Asserted Trade
2  Secrets," to distinguish *Ford Motor*, rings hollow for the same reason. *See id.* (citing *Ford Motor Co.*
3  *v. Versata Software, Inc.*, 2018 WL 10733561, at *11-12 (E.D. Mich. July 9, 2018)).  Valeo argues
4  that NVIDIA's citation to *Synopsys* "attempt[s] to establish a requirement not found in the law" based
5  on the facts of that case, yet fails to identify any "specific facts" that supposedly limit the application
6  of the Synopsys court's holding here.  Opp. at 19 (citing *Synopsys, Inc. v. Risk Based Sec., Inc.*, 70
7  F.4th 759, 774 (4th Cir. 2023)).

8      ***Finally***, Valeo has no response to the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" i.e. "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" that Mr.
10 Malackowski uses for "apportioning" his unjust enrichment calculation to NVIDIA's parking profits,
11 or ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
12 Mot. at 20 (citing deposition of Dr. Johnson-Roberson).  This further confirms that "[i]t was not
13 reliable for [Malackowski] to rely on such a conclusory, unsupported assertion" from Dr. Johnson-
14 Roberson. *Ford Motor Co. v. Versata Software, Inc.*, 2018 WL 10733561, at *12 (E.D. Mich. July
15 9, 2018) (granting motion to exclude expert testimony for failure to apportion and reliance on "wholly
16 conclusory" technical expert opinions that asserted trade secrets "enabled" the technology at issue).

17     **B.**    **Mr. Malackowski's "Opinions" on Liability Do Not Help the Jury**

18     Valeo's attempt to recharacterize Section 9.2 of Mr. Malackowski's report as "factual
19 background" that merely "inform[s] his analysis" (Opp. at 22-23) contradicts his own admission that
20 Section 9.2 "includes [his] opinions in this case" regarding "the extent of misappropriation." Mot.
21 at 24 (quoting Dkt. 269-4 at 59:5–61:5).  Valeo cannot retract that admission, made under oath, with
22 the post hoc attorney argument (and without any support in the record) that he "considered Section
23 9.2 part of his opinions" but not "independent 'opinions' about the breadth of the misappropriation."
24 Opp. at 23.  Moreover, Mr. Malackowski's testimony that he "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (Opp. at 23 (quoting
26 Dkt. 265-4 at 59:14-60:5)) does not provide him a free license to spin his own factual narrative under
27 the guise of expert testimony.  *Morton v. Cnty. of San Diego*, 2024 WL 5126281, at *15 (S.D. Cal.
28 Dec. 16, 2024) (excluding "unadorned regurgitation of the facts, evidence, and/or record" from

expert report); *Johns v. Bayer Corp.*, 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013) (excluding expert's "synopsis" and "factual narrative"). Mr. Malackowski lacks the expertise required to assess "the breadth of the misappropriation"; Valeo's attempt to distinguish *Stepien* thus misses the point entirely—the issue is not merely what evidence Mr. Malackowski has reviewed, but whether he possesses the specialized knowledge required to assist the jury in weighing or analyzing evidence about the extent of misappropriation (he does not). Opp. at 23; *Stepien v. Raimondo*, 2024 WL 4043589, at *31 (W.D. Wash. Sept. 4, 2024). Ultimately, like the expert in *Aya Healthcare*, Mr. Malackowski's opinions in Section 9.2 amount to an inadmissible "narrative of [Valeo's] theory of the case, … properly presented through percipient witnesses and documentary evidence," which a juror is capable of understanding without his help. *Aya Healthcare Servs.*, 613 F. Supp. 3d at 1323 (cleaned up).

## VI. CONCLUSION

For the foregoing reasons, NVIDIA respectfully requests that the Court exclude the expert testimony of James Malackowski pursuant to Federal Rule of Evidence 702.

DATED: May 29, 2025

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Jodie Cheng*

*Attorneys for Defendant NVIDIA Corporation*