UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALEO SCHALTER UND SENSOREN GMBH,<br><br>Plaintiff,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Case No. 23-cv-05721-NW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 264 |

On May 8, 2025, Defendant NVIDIA Corporation ("NVIDIA") filed a motion for summary judgment as to Plaintiff's, Valeo Schalter und Sensoren GmbH's ("Valeo"), trade secrets claims. ECF No. 264. Having considered the parties' briefs and the relevant legal authority the Court concludes oral argument is not required. S*ee* N.D. Cal. Civ. L.R. 7-1(b). The Court GRANTS in part and DENIES in part the motion.[1]

**I.  BACKGROUND**

    **A.  Factual Background**

Valeo, an automotive technology company, supplies technology such as driving and parking assistance technology to car manufacturers across the globe. NVIDIA is a leader in artificial intelligence ("AI") technology and works with car companies to create driving systems that harness AI. In this trade secret case, Valeo contends NVIDIA misappropriated Valeo's trade secrets relating to parking assistance technology.

---

[1] Unless redacted from the public version of this order, the Court finds it unnecessary to seal any other portion of this order. The Court will address the remainder of the parties' sealing requests in a separate order.

1    In 2020, Mercedes-Benz contracted with NVIDIA to further the car maker's driver-assist
2  and autonomous driving technologies. As part of the project, Mercedes agreed that Valeo would
3  provide ultrasonic hardware generating sensor raw data, while NVIDIA would provide other
4  required hardware and software. Valeo and NVIDIA agreed to coordinate aspects of their
5  deliverables to Mercedes.
6    One of Valeo's engineers on the Mercedes project was Mohammad Moniruzzaman, who
7  worked at Valeo from 2015 until August 2021. In September 2021, Moniruzzaman left Valeo and
8  started at NVIDIA as a Senior Ultrasonic Perception Engineer where he continued work on the
9  Mercedes project.
10   According to Valeo, shortly before leaving his job, Moniruzzaman downloaded Valeo
11 source code, documents, and files to his personal computer. Valeo asserts that Moniruzzaman had
12 access to and used Valeo source code as a reference when building out parking software at
13 NVIDIA.
14   On May 19, 2022, police searched Moniruzzaman's home in Germany. NVIDIA
15 immediately placed Moniruzzaman on leave and disabled his access to NVIDIA systems. In
16 March 2023, NVIDIA terminated Moniruzzaman. Six months later, on September 8, 2023, a
17 German court convicted Moniruzzaman for unlawful acquisition, use, and disclosure of Valeo's
18 trade secrets.
19   While Moniruzzaman was on leave, NVIDIA reverted[2] his additions to NVIDIA's code.
20 NVIDIA's senior system software engineer, Arthur Rajala, oversaw this process. Valeo contends
21 the reversion was incomplete because NVIDIA failed to approach the process systematically, and
22 NVIDIA kept Moniruzzaman's contributions in accessible historical versions of NVIDIA's code
23 that NVIDIA engineers could review.

---

[2] NVIDIA's witnesses describe this reversion as making "███████████████████████████ or making "███████████████████████████████████████████." *See* Hagiz Decl., Ex. 3, ECF No. 264-4 (Rajala Depo. at 215:11-12); Hagiz Decl., Ex. 4, ECF No. 264-5 (Oh Depo. at 190:16-17).

Separately, in 2023, NVIDIA hired another former Valeo engineer, Mohamed Shawki Elamir. In December 2020, Elamir emailed a Valeo document to his personal email address as part of his Valeo-sponsored PhD thesis.

### B. Procedural History

Valeo sued NVIDIA twice in Germany shortly after Moniruzzaman's deception came to light. In the first action, the court found Valeo had not shown NVIDIA to possess any Valeo trade secrets. Valeo withdrew its allegations in the second action after receiving the findings from a court-appointed neutral expert.

On November 7, 2023, Valeo sued NVIDIA in the Northern District of California for trade secret misappropriation under federal Defend Trade Secret Act ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA"). The parties conducted fact and expert discovery. The case is set for trial on November 10, 2025.

NVIDIA moved for summary judgment on May 8, 2025. Mot. for Summ. J., ECF No. 264 ("MSJ"). Valeo opposed. Opp'n to MSJ, ECF No. 281. NVIDIA filed a reply in further support of its motion on May 29, 2025. MSJ Reply, ECF No. 289. Valeo filed objections[3] to new evidence in the reply on June 5, 2025. Objections, ECF No. 295.

## II. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[3] Because the Court did not consider that new evidence in ruling on the motion for summary judgment, Valeo's objections are moot.

3

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the Court does not make credibility determinations or weigh conflicting evidence regarding material facts. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence presented and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *Id*. at 631. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmoving party fails to do so, the court may properly grant summary judgment in favor of the moving party. *Id.*

## III. DISCUSSION

### A. NVIDIA's General Arguments To All Trade Secrets

"To state a claim for misappropriation of trade secrets under the [CUTSA], a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *1 (N.D. Cal. Feb. 16, 2017) (citation omitted). "The elements of misappropriation under the DTSA are similar to those under the CUTSA." *Id.* (citing 18 U.S.C. § 1839(5) and Cal. Civ. Code § 3426.1(b)); *see also InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020).

"Under both the DTSA and the CUTSA, 'misappropriation' means either (1) the '[a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means;' or (2) the '[d]isclosure or use of a trade secret of another without express or implied consent.'" *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (quoting 18 U.S.C. § 1839(5) and Cal. Civ. Code § 3426.1(b)).

NVIDIA argues it is entitled to summary judgment because the actions of Moniruzzaman cannot be attributed to NVIDIA. MSJ at 7. NVIDIA argues at length that it did not ratify Moniruzzaman's conduct, nor is NVIDIA vicariously liable for his conduct because he was not acting within the scope of his employment. *Id.* at 7-9. Essentially NVIDIA asserts that Valeo's claims of trade secret misappropriation lie against Moniruzzaman, not NVIDIA.

4

NVIDIA's arguments skirt the issue. The parties do not dispute that Moniruzzaman downloaded Valeo source code, documents, and files to his personal computer. They do not dispute that Moniruzzaman had access to these materials when building out software at NVIDIA. The parties also do not dispute that after discovering Moniruzzaman's theft, NVIDIA placed him on leave, disabled his access to NVIDIA systems, and eventually terminated his employment.

What the parties dispute is what happened next. NVIDIA disputes whether Moniruzzaman incorporated Valeo trade secrets into the code he created while working for NVIDIA. Valeo asserts that the circumstantial evidence supports the inference that he did.

Regardless, NVIDIA claims it rolled back all Moniruzzaman's additions to NVIDIA's code base. MSJ at 2. Valeo disputes the scope of this roll back. Opp'n at 5. The crux of Valeo's trade secret claims hinge on whether Moniruzzaman used Valeo's trade secrets with NVIDIA's knowledge and, if so, whether NVIDIA then used Moniruzzaman's tainted work in its technology. NVIDIA contests both contentions: according to NVIDIA, Moniruzzaman did not use Valeo's secrets with NVIDIA's knowledge prior to the search of his apartment, but even if he did, his work was "rolled back" and not a part NVIDIA's technology. MSJ at 7-9. Valeo rightly points out that there are a number of circumstantial facts that give rise to the interference that NVIDIA relied on Moniruzzaman's tainted work: "[a]mong other things, (i) NVIDIA never used a clean room despite Mr. Rajala's exposure to Valeo trade secrets; (ii) Mr. Rajala had access to Valeo's trade secrets both because he learned about Valeo's code from [Moniruzzaman] and because NVIDIA[] . . . retained [Moniruzzaman]'s tainted code, (iii) NVIDIA made rapid progress on parking technology between 'disaster' failures in March 2023 and stronger performance in June 2023—an unlikely timeline making it likely that [NVIDIA implemented Moniruzzaman's misappropriated code], (iv) NVIDIA hired another Valeo engineer (Mr. Elamir) with knowledge of Valeo's trade secrets, and (iv) NVIDIA's code, in fact, includes numerous functionalities directly paralleling Valeo's stolen code." Opp'n at 11. Valeo argues that, taken together, this evidence creates a material issue of fact. The Court agrees with Valeo.

"Plaintiffs alleging trade secret misappropriation may prove such misappropriation by circumstantial as well as direct evidence." *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg.*

1  *Co.*, 617 F. Supp. 2d 938, 944 (N.D. Cal. 2007).  Indeed, "[c]ircumstantial evidence is particularly appropriate in trade secret cases . . . [because m]isappropriation and misuse can rarely be proved by convincing direct evidence." *Id.* (citation omitted).

Here, Valeo has offered circumstantial evidence sufficient to create a genuine issue of fact for trial as to whether Moniruzzaman incorporated Valeo trade secrets into NVIDIA's technology. First, Valeo notes that while Moniruzzaman was working at NVIDIA, German police found confidential Valeo documentation and hardware pinned to the walls of his workspace.  Levine Decl. in Support of MSJ Opp'n, Ex. M, ECF No. 281-12.  Similarly, an inspection of his laptop demonstrated that he kept Valeo source code.  *Id.*  These facts support the reasonable inference that Moniruzzaman incorporated Valeo trade secrets into the code he created for NVIDIA. Whether he actually did is a question for the jury.

Further, although NVIDIA asserts that it reverted all Moniruzzaman's contributions, there is a genuine dispute of material fact as to this issue.  While the evidence — that NVIDIA: did not use a clean room; retained access to the tainted code via employee knowledge and "▓▓▓▓▓▓"; made rapid progress on its technology after a series of failures; hired another former Valeo employee; and, that NVIDIA's code includes functionality parallels to Valeo's — may all be circumstantial, a reasonable jury could return a verdict for Valeo.  As such, summary judgment is improper and is DENIED on this issue.

In the alternative, NVIDIA argues that it is entitled to summary judgment as to any trade secrets stricken per NVIDIA's concurrently filed motion to strike.  MSJ at 4.  Because the Court denied the motion to strike in full, this argument is moot.

Finally, NVIDIA argues that it is entitled to summary judgment because Valeo has not defined its trade secrets with sufficient particularity to separate them "from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." *Imax Corp. v. Cinema Techs.*, Inc., 152 F.3d 1161, 1164 (9th Cir. 1998) (simplified); *see* MSJ at 4-6.  For example, NVIDIA argues that Valeo contends "for each asserted trade secret, '▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.'"  MSJ at 5.  NVIDIA also asserts that Valeo has rewritten its trade secrets to include details within documents cited as

6

1    ▮" of each trade secret. *Id.* In short, NVIDIA contends that Valeo defines its trade

2    secrets vaguely and broadly.

3    Valeo argues that it has identified its trade secrets with sufficient particularity, as

4    evidenced by NVIDIA's experts, who were able to respond on the substance of Valeo's trade

5    secret claims. Opp'n at 25. Valeo asserts that "[t]he similarities in NVIDIA's code that Valeo

6    points to are not re-definitions of Valeo's trade secrets; rather, they are simply evidence of

7    NVIDIA's past and present use of Valeo's code." *Id.*

8    At a high level, Valeo's trade secrets encompass "▮

9    ▮

10   ▮

11   ▮

12   ▮." Hagiz Decl., Ex. 18 at 1, ECF No. 264-19

13   ("Valeo's Trade Secret Identification"). Valeo notes that its source code and documents "▮

14   ▮," and then

15   proceeds to cite to several specific source code files and documents within particular file paths.

16   *Id.* at 1-5. Where relevant, Valeo includes figures that illustrate the identified trade secret. *See*

17   *e.g. id.* at 6.

18   Here, there is a genuine issue of material fact as to whether Valeo identified its trade

19   secrets with sufficient particularity. *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, No. 23-

20   16093, 2025 WL 2315671, at *4 (9th Cir. Aug. 12, 2025) (noting that "[w]hether a trade secret is

21   identified with 'sufficient particularity' is a question of fact"). A reasonable jury could conclude

22   that Valeo's descriptions of its "▮

23   ▮," which include references to specific source code files,

24   documents, and figures that illustrate particular functionalities are protectable trade secrets.

25   Because Valeo identified aspects of its technology with enough specificity to create a triable issue

26   of fact, summary judgment is DENIED.

27

28

### B.  NVIDIA's Arguments Regarding Specific Trade Secrets

In addition to its general arguments applying to all trade secrets, NVIDIA specifically disclaims misappropriation of Valeo's trade secret numbers 3, 8, 9, 11, and 12, as well as 4 and 10. The Court agrees in part and disagrees in part, and it addresses each in turn.

#### 1.  Trade Secret 3

Trade secret 3 includes Valeo's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Valeo's Trade Secret Identification at 13. Trade secret 3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* Trade secret 3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* at 14.

As an initial matter, NVIDIA argues that it did not acquire trade secret 3 because NVIDIA "reverted its operative code base to remove all of Mr. Moniruzzaman's changes to the code," MSJ at 11, and Mr. Rajala ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* at 10. For all the same reasons articulated above, this argument fails.

NVIDIA further argues that it does not use trade secret 3 and that Valeo cannot show that NVIDIA's technology was substantially derived from trade secret 3. First, regarding use, NVIDIA argues that its current code base does not use "▮▮▮▮▮▮▮▮▮▮▮" but instead has been replaced by "▮▮▮▮▮▮▮▮▮▮." MSJ at 11. Second, NVIDIA argues that Valeo ignores core features of trade secret 3 that are missing from not only NVIDIA's code but Mr. Moniruzzaman's tainted code. *Id.* For example, NVIDIA emphasizes that the "▮▮▮▮▮▮▮▮ in Mr. Moniruzzaman's and NVIDIA's obsolete code look nothing like [trade secret] 3, and they lack the specific details" found in Valeo's trade secret identification. *Id.* Finally, NVIDIA argues that Valeo cannot demonstrate that NVIDIA's implementation is substantially derived from trade secret 3 "because general similarities in the public domain are all that Valeo identifies to connect its trade secret with NVIDIA's product." *Id.* at 12.

Valeo counters that there are "material issues of fact regarding whether NVIDIA used Valeo's code as a 'starting point'" to develop this technology. Opp'n at 16. Additionally, Valeo asserts that there are material issues of fact as to whether "NVIDIA relied only on the public domain in developing its software." *Id.* The Court agrees with Valeo.

"[P]roof that trade secrets have been 'used' can come in various forms, direct incorporation being just one possible form." *BladeRoom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-CV-01370-EJD, 2018 WL 452111, at *5 (N.D. Cal. Jan. 17, 2018). "Misappropriation includes not only wholesale pirating of an ideas, but also the unauthorized utilization of an idea as a starting point or guide in developing a process or as a means to understand what pitfalls to avoid." *Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1047 (S.D. Cal. 2017) (citation omitted). Thus, "an actor is liable for using the trade secret with independently created improvements or modifications if the result is substantially derived from the trade secret." *BladeRoom Grp. Ltd.*, 2018 WL 452111, at *5 (quoting Restatement (Third) of Unfair Competition § 40 (1995)).

First, as noted above, Valeo's circumstantial evidence could lead a reasonable jury to infer that Mr. Moniruzzaman incorporated Valeo trade secrets into NVIDIA technology. Further, while NVIDIA asserts that it rolled back this tainted code, there are material issues of fact relating to the extent of this rollback. As such, there are material issues of fact as to whether NVIDIA used trade secret 3, either directly or as a starting point, or substantially derived its technology from trade secret 3. The lack of a direct correlation between the "claims" of trade secret 3 and NVIDIA's code is immaterial. A reasonable jury could find that NVIDIA substantially derived its technology for "▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" from trade secret 3. Summary judgment is DENIED.

**2.  Trade Secret 8**

Trade secret 8 includes Valeo's ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" and reflects "▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉." Valeo's Trade Secret Identification at 25-26. Valeo's technology embodied in trade secret 8 "▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

▬▬▬▬▬." *Id.* at 26. Trade secret 8 evaluates the "▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬." *Id.* Trade secret 8 "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬." *Id.* at 27.

To start, NVIDIA again argues that it did not acquire trade secret 8 "through Mr. Moniruzzaman's code." MSJ at 13. For all the same reasons above, this argument fails.

NVIDIA also argues that it is entitled to summary judgment because its did not acquire trade secret 8 through a single document that its employee (and former Valeo employee), Mr. Elamir, emailed to himself in December 2020. *Id.* at 13-14. In support, NVIDIA cites Mr. Elamir's testimony stating that he did not access or use this document or any other Valeo material after leaving Valeo. Hagiz Decl., Ex. 26 at 47:20-48:4, ECF No. 264-27 ("▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬."); *see also id.* at 181:13-23.

Valeo does not refute this evidence but argues, "there are material issues of fact over whether [trade secret] 8 was misappropriated even setting aside Mr. Elamir's theft." Opp'n at 19.

While the Court agrees with Valeo (as discussed below) that there are other issues of material fact over whether trade secret 8 was misappropriated, there are no genuine disputes of material fact as to Mr. Elamir. There is no dispute that Mr. Elamir did not use or access the document he emailed to himself, or any other Valeo material after leaving Valeo. Summary judgment is GRANTED on this limited issue related to trade secret 8.

However, material disputes of fact remain as to whether NVIDIA misappropriated trade secret 8. As with trade secret 3, NVIDIA argues that it does not use trade secret 8 and that Valeo cannot show that NVIDIA's technology was substantially derived from trade secret 8.

10

1    As to use, NVIDIA argues that it does not employ certain core features of trade secret 8.
2    MSJ at 15. Further, NVIDIA argues that Valeo cannot demonstrate that NVIDIA's
3    implementation is substantially derived from trade secret 8 because the features "Valeo claims
4    NVIDIA uses are all high-level generalities" and "appear in public materials." *Id.* at 15-16. Valeo
5    argues there is contrary evidence that shows "NVIDIA *did* rely on Valeo's trade secrets in
6    developing the current version of NVIDIA's ▮▮▮▮▮." Opp'n at 18. Valeo cites to
7    its expert demonstrating how "NVIDIA's code utilizes the same '▮▮▮▮▮
8    ▮▮▮." *Id.* Valeo's counterevidence creates a disputed issue of material fact that makes summary
9    judgment inappropriate.

10   Additionally, as with trade secret 3, Valeo asserts that there are material issues of fact as to
11   whether "NVIDIA used Valeo's code as a guide in developing [its] ▮▮▮" software. *Id.* at
12   17. For the reasons expressed above, the Court agrees with Valeo and DENIES summary
13   judgment on this issue.

### 3.  Trade Secret 9

15   Trade secret 9 includes Valeo's ▮▮▮▮▮
16   ▮▮▮" and reflects "▮▮▮▮▮
17   ▮▮." Valeo's Trade Secret Identification at 29. Valeo's technology embodied in trade secret
18   9 "▮▮▮▮▮
19   ▮▮▮▮▮
20   ▮▮▮▮▮" *Id.*

21   NVIDIA argues that it did not acquire trade secret 9 because "it is undisputed that Mr.
22   Moniruzzaman did not write any code relating to [trade secret] 9 while at NVIDIA." MSJ at 17.
23   Valeo appears to concede this, but counters that Moniruzzaman "specifically communicated with
24   Mr. Rajala regarding ▮▮▮. In support, Valeo cites only to its expert who explains
25   ▮▮▮▮▮
26   ▮▮▮▮▮." The expert, in turn, cites to
27   NVIDIA0287993, an ▮▮▮▮▮
28   ▮▮▮▮▮

11

███████████████████████████████████

███").'" Johnson-Roberson Expert Report at ¶ 1382, ECF No. 281-6. Valeo's evidence is not enough to preclude summary judgment. The DTSA and CUTSA both require "*acquisition* of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means or *disclosure* or use of a trade secret of another without express or implied consent." *Alta Devices, Inc.*, 343 F. Supp. 3d at 877 (simplified and emphasis added). Valeo's expert's interpretation of a single email (a document that Valeo does not provide in support of its opposition to NVIDIA's motion) is insufficient to establish either acquisition by NVIDIA or disclosure by Moniruzzaman of Valeo trade secret 9.

Similarly, Valeo's reliance on Mr. Elamir as the vehicle for disclosure of its trade secrets fails. Again, Valeo relies on its expert's interpretation of an NVIDIA document to argue that "Mr. Elamir also directly disclosed ███████████████████████ ██████." Opp'n at 20 (citing Johnson-Roberson Rebuttal Expert Report at ¶ 159, ECF No. 281-28). Valeo's supported evidence is again an email that Valeo does not provide, in which Mr. Elamir comments that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." Johnson-Roberson Rebuttal Expert Report at ¶ 159. But this evidence, which is a technical comment and a high-level suggestion of a possible solution, does not support disclosure of Valeo's trade secret 9, which is specialized technology that "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Valeo's Trade Secret Identification at 29.

Valeo also overemphasizes Elamir's deposition testimony. The Court agrees that Mr. Elamir testified that he recognized Valeo's ████████████ file, but this does not support the inference that Elamir disclosed the details of this file or functionality with NVIDIA. Elamir Depo. at 259:21-260:9, ECF No. 281-25.

In light of the forgoing, and viewing the evidence presented and the inferences to be drawn in the light most favorable to Valeo, the Court GRANTS summary judgment in NVIDIA's favor on trade secret 9.

### 4. Trade Secret 11

Trade secret 11 includes Valeo's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮" and reflects ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Valeo's Trade Secret Identification at 34. Valeo's technology embodied in trade secret 11 "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮." *Id.*

NVIDIA argues that it did not acquire trade secret 11 because Valeo's only theory of disclosure[4] is based on Mr. Elamir's conduct and "Mr. Elamir's sworn testimony [is] that he never accessed, used, or disclosed any Valeo material while working for NVIDIA." MSJ at 20; *see also* Reply at 14. The Court agrees with NVIDIA.

As discussed above, there are no genuine disputes of material fact that Mr. Elamir did not use or access the document he emailed to himself, or any other Valeo material after leaving Valeo. Hagiz Decl., Ex. 26 at 47:20-48:4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); *see also id.* at 181:13-23. Instead of countering this evidence, Valeo appears to extrapolate that Mr. Elamir must have disclosed Valeo trade secrets because, after starting at NVIDIA, he began "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮." Opp'n at 21. The Court agrees with NVIDIA that this sounds in the inevitable disclosure doctrine, a doctrine California courts have rejected. *Bourns, Inc. v. Raychem*

---

[4] In its opening brief, NVIDIA notes that Valeo contends that "Mr. Moniruzzaman also disclosed [trade secret] 11 to NVIDIA in an e-mail." MSJ at 20. Other than a passing mention of NVIDIA hiring Mr. Moniruzzaman, Valeo does not respond to this argument. *See* Opp'n at 21. As such, the Court considers Valeo to have withdrawn this contention.

1  *Corp.*, 331 F.3d 704, 708 (9th Cir. 2003) (citing *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th
2  1443, 1463 (2002)) (describing the inevitable disclosure doctrine as allowing the inference that
3  former employees' new jobs "were so similar that 'it would be impossible for an employee to
4  perform his or her new job without using or disclosing those trade secrets.'").
5      Summary judgment is GRANTED in NVIDIA's favor on trade secret 11.

### 5. Trade Secret 12

Trade secret 12 includes Valeo's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" and "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." Valeo's Trade Secret Identification at 39. Valeo's technology embodied in trade secret 12 "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." *Id.*

Again, NVIDIA states it did not acquire trade secret 12 through Mr. Elamir. MSJ at 23. Instead, NVIDIA argues that Valeo relies on the speculation that, before leaving Valeo years earlier, Mr. Elamir memorized trade secret 12 and implemented it at NVIDIA. *Id.* NVIDIA states that Valeo's theory is refuted by Mr. Elamir's "testimony that his NVIDIA code only implemented 'basic' functionality that 'anyone working on this problem' would have used." *Id.* (citing Hagiz Decl., Ex. 26 at 275:9-276:21 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇")).

Valeo does not refute this evidence but argues that "NVIDIA's assertion that it developed its code independently is also undermined by evidence that Mr. Elamir had access to Valeo trade secrets" and that "Mr. Elamir could not confirm whether he still had Valeo's source code on his personal computer and refused to consent to a forensic search." Opp'n at 22-23. In support of this statement, Valeo cites to its own expert's opinion. For all the same reasons expressed above, this is insufficient to defeat summary judgment, especially given Mr. Elamir's sworn testimony stating: "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

████████████████████████████████████████

████████████████████████████████." Levine Decl., Ex. Z at 41:5-18, ECF No. 281-25.

Summary judgment is GRANTED in NVIDIA's favor on trade secret 12.

### 6. Trade Secrets 4 and 10

In its opening motion, NVIDIA argues that it is entitled to summary judgment on trade secrets 4 and 10 because the emails Valeo relies on to support its disclosure theory only communicate "high-level generalities, not the features of these trade secrets." MSJ at 25. Valeo counters that its evidence "provide[s] more than mere generalities—they reference and, in some instances, describe the implementation and rationale behind Valeo's confidential approaches." Opp'n at 24 (citing NVIDIA documents and expert testimony). NVIDIA appears to abandon this argument in its reply.

Therefore, considering the evidence construed in the light most favorable to Valeo, the non-moving party, summary judgment as to trade secrets 4 and 10 is DENIED.

## IV. CONCLUSION

For the foregoing reasons, NVIDIA's motion for summary judgment is GRANTED in part and DENIED in part as follows:

- Summary judgment is DENIED as to trade secrets 3, 4, 8, and 10.
- Summary judgment is GRANTED on the limited issue of Mr. Elamir's disclosure of trade secret 8 (as described in this order).
- Summary judgment is GRANTED in NVIDIA's favor as to trade secrets 9, 11, and 12.

**IT IS SO ORDERED.**

Dated: August 28, 2025

Noël Wise
United States District Judge